## Daniels *v*. Adlof et ux., Appellants.

*Ejectment—Adverse possession—Character of possession—Evidence—Payment of taxes—Negotiation for purchase of title—Case for jury.*

In an action of ejectment defendant claimed title by adverse possession. The plaintiff disputed both the adverse character of possession and the fact of possession itself. There was evidence that one of the defendants stated that he would no longer pay taxes on the land, since he could not secure title thereto by such payment.

Under such circumstances the inferences to be drawn from defendant's statement, insofar as it related to the character of the possession, were for the jury.

Where in such a case it appears that defendants negotiated for the purchase of the outstanding title, such negotiations are a proper subject for the consideration of the jury, insofar as they bear upon the character of defendants' possession.

A stranger cannot acquire title to unoccupied land by payment of taxes thereon.

Actual entry upon the ground is not necessary to support the right of a holder of a paper title.

*Appeals—Rule 55—Supplemental record by appellee—Printing—Allowance as costs.*

Where the appellants designate evidence which they do not intend to print, in accordance with rule 55, and such designation is approved by the trial court, the appellee, as a general rule, is not entitled to reimbursement for the costs of printing such omitted testimony in a supplemental record, although judgment is affirmed on appeal.

Argued April 19, 1926.    Appeal No. 113, April T., 1926, by defendants, from judgment of C. P. Beaver County, September T., 1924, No. 426, in the case of Eva S. Daniels v. Frederick W. Adlof et ux.    Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.    Affirmed.

Ejectment.    Before READER, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff on which judgment was entered. Defendants appealed.

*Errors assigned* were answers to various points for charge submitted by the defendants.

*James L. Hogan,* and with him *Hazzard & Darragh,* for appellants.

*Philip E. Hamilton,* for appellee.

OPINION BY CUNNINGHAM, J., July 8, 1926:

Appellants, Mary L. Adlof and Frederick W. Adlof, her husband, were defendants in the court below in an action of ejectment brought by appellee, Eva S. Daniels, to recover possession of the northern half of lot No. 374 in the general plan of the Borough of New Brighton, Beaver County, Pennsylvania.    Said half of said lot is 21 feet in width fronting on 5th Avenue in

said borough and extending eastwardly to 6th Avenue and is bounded on the south by the southern half of said lot No. 374 and on the north by lot No. 372, which is 42 feet in width and likewise extends from 5th Avenue on the west to 6th Avenue on the east.

Eva S. Daniels, appellee, sought to recover possession of said northern half of said lot No. 374 upon the strength of her record or paper title to the same, and the appellants defended upon the ground that the said Mary L. Adlof, nee Mary L. Emmel (Emil), and her father and mother, as her predecessors in title, had acquired title to said portion of said lot by adverse possession, beginning in June, 1867. The trial in May, 1925, resulted in a verdict in favor of the plaintiff and a new trial having been refused this appeal was taken by the defendants.

The five assignments of error relate exclusively to the answers of the trial judge to three of the fifteen points for special instructions submitted on behalf of defendants.

1. The first and second assignments charge the court below with error in qualifying its affirmance of defendants' first point, which point and answer were:

> "That if Christian Emil did say to Edward Houk in 1883 or 1882, that he had been paying taxes on the property in question and that one of the McGill heirs was away in the west, and that he had quit paying taxes on the property for the reason that he understood that in such circumstances he could not get the property by paying taxes on it, such statement would not prevent the running of the statute of limitations, if it had already started to run.
>
> Answer—This is affirmed, with this qualification: That this is true in so far as he referred to the acquiring of title by the payment of taxes.

But if you find from the evidence that he said more than that, and stated that he had concluded not to pay taxes because he could not get title for any other reason or in any other way than by the payment of taxes, you will consider that for the purpose of determining whether or not the possession of this lot in dispute by Christian Emil, if he was in possession of it, was an adverse possession. Of course you will disregard this, unless you find that the conversation took place as testified to by Mr. Houk. But if you find it did take place, you will consider it only as it may affect the question of whether the possession of Mr. Emil was adverse, if he had any possession at all; whether he was then holding the possession of that property with a view of getting the title to it.''

A brief reference to the issue which occasioned the submission of the foregoing point is essential to a consideration of this assignment of error. The main issue arising under the pleadings and evidence in the case was whether the defendants had shown by the fair preponderance of the evidence that they and their predecessors in title had been in actual, continued, visible or open, notorious, exclusive, and hostile or adverse possession of the real estate in dispute for a period of twenty-one years.

It was contended by the defendants that the father of Mary L. Adlof, Christian Emmel, bought said lot No. 372 at sheriff's sale in June, 1867; built a house thereon and took possession not only of said lot No. 372 but also of the northern half of the adjoining lot to the south, being lot No. 374; that Christian Emmel died in 1899, intestate, leaving to survive him his widow, Catherine Emmel, who died in 1914, and one daughter, Mary L., intermarried with Frederick W. Adlof, the present defendants; that the statute of limi-

tations began to run in 1867; and that nothing had occurred to interrupt the running of the statute down to the present time.

It was conceded that the title to said northern half of lot No. 374 had been vested in James A. McGill, who died, intestate, in 1854. It was proven by the plaintiff, Eva S. Daniels, that by deed dated June 13, 1888, the heirs of the said McGill conveyed the real estate now in dispute to Henry S. Johnston; that said Johnston by deed dated May 15, 1890, conveyed the same to F. X. Fisher, the father of the plaintiff; that said Fisher died, intestate, March 22, 1909, leaving to survive him a widow, now deceased, and three daughters, Lizzie J. Gierst, Hannah M. Rainbow, and the said Eva S. Daniels; and that by deed dated July 1, 1922, the sisters of said plaintiff conveyed their interests in said half of said lot to plaintiff.

The controversy at the trial related chiefly to the question whether Christian Emmel and his heirs had ever actually taken possession of said half of said lot and, if so, what the nature of such possession had been. The evidence, taken as a whole, showed occasional uses by defendants and their predecessors of the half lot in question, such as using it for ingress and egress to their own lot, No. 372, drying clothes and dumping ashes upon it, picking fruit from trees growing thereon, and the like. But, as stated by the trial judge in his opinion refusing a new trial, the jury was fully warranted in finding from the evidence that the land in dispute was a vacant town lot unenclosed or only partly enclosed; open to common use by the neighbors from time to time for such purposes as such lots are ordinarily used; occupied and used by others than the defendants at various times as a short way between the abutting streets, as a garden, as a storage place for an automobile and implements of trade, as a playground for the children of the vicinity, etc.; and in

concluding that the evidence was not sufficient to support the defendants' claim to title by adverse possession.

Among other items of evidence offered for the purpose of showing that whatever possession the defendants may have had was not of the character essential to establish a title, was the testimony of Edward Houk, referred to in said point. He was a disinterested witness, who had lived for forty-three years on lot No. 370 immediately north of the Emmel home. The material part of his testimony was as follows:

"Q.  Did you ever have any conversation with Christian Emil with reference to this lot?

A.  I heard him telling that he had paid taxes on this lot for a number of years, and that he had quit paying taxes on it because—"

(Objection, discussion, and overruling of objection.)

"Q.  Go ahead.

A.  He said he had paid taxes on this property for a number of years, but he had quit paying taxes on account of, that there was one of the heirs of the property who was in the west somewhere, and he didn't know where he was, and he could not own the property; that he couldn't gain it, by paying taxes.

Q.  Do you remember about when this conversation took place?

A.  About the year 1882 or 1883......

Q.  And he said the reason why was that he could not get it by paying taxes on it?

A.  Yes, because one of the heirs was away in the west."

The inferences to be drawn from this testimony were for the jury. At the time the alleged statement was made, the statute, under the contention of defendants,

had been running for approximately sixteen years
and the heirs of the said James A. McGill had not yet
made their deed to the said Henry S. Johnston. It
would not be an unwarranted inference for a jury to
draw from this testimony that Christian Emmel in-
tended the witness Houk to understand that he,
Emmel, could not obtain a conveyance for the property
because the whereabouts of one of the McGill heirs
was unknown and, although he had been paying the
taxes for a number of years, he had concluded to quit
paying them because he could not thus acquire a title.

It is to be noted in considering this assignment that
the trial judge affirmed without qualification defend-
ants' fourth and sixth points, the fourth reading, ''That
neither the assessment nor payment of taxes is an
element of adverse possession of real estate in Penn-
sylvania,'' and the sixth, ''That assessment in the
name of and payment of taxes by a person or persons
out of possession of land, will neither stop the running
of the statute of limitations nor divest a title acquired
under the statute of limitations.'' This was a correct
statement of the law as, ''A stranger will not acquire
title by payment of taxes on unoccupied land,'' Bear
Valley Coal Company v. Dewart, 95 Pa. 72, because,
''Like any other voluntary payment of another's debt
it gives no right or advantage against the owner,''
Sorber v. Willing, 10 Watts 141.

Several of the cases cited by the learned counsel for
appellants in support of his contention that the point
should have been affirmed without qualification are
cases in which it was conceded that the intruder was
in actual possession of the property and in such case it
is essential, ''In order to toll the statute that there
should be not only an acknowledgment of the title of
the person claiming adversely, but also an agreement
on the part of the intruder to leave the land or hold
as tenant,'' and, ''Unless he makes such a definite
promise to the owner as to prevent the owner taking

the steps necessary for the regaining of his possession, there is no estoppel, and the statute continues to run:" Byers v. Sheplar, 7 Atlantic Reporter 182; Patterson v. Reigle, 4 Pa. 201. In the case last cited our Supreme Court said, "It has been determined that one already in possession estops himself by declarations of submission addressed to the owner; and it would seem he might do so by a general declaration explanatory of the nature of his entry." In the present case, however, it was earnestly contended throughout the case that the defendants had never actually been in possession.

In our opinion the learned trial judge committed no error in qualifying his affirmance of the point in the manner in which it was qualified and in instructing the jury to consider this evidence, if they found that the conversation took place, only as affecting the character of the alleged possession of Christian Emmel. These assignments are dismissed.

2. The third assignment alleges that there was error in the explanation added by the trial judge to his answer to the 11th point submitted by defendants, which point and answer are as follows:

"That there is no evidence that Henry S. Johnston ever entered upon the ground in question, and if the jury find that Christian Emil had acquired title to said ground by twenty-one years adverse possession before May 15, 1890, the date of the alleged Fisher deed, the verdict must be for the defendants.

Answer—This is affirmed, with this explanation: that in order to make out the plaintiff's record title, it is not necessary that there should be proof of an actual entry by Mr. Johnston upon the land. The acknowledgment and recording of the deed to him presumes a delivery of the deed;

and the delivery of the deed to him would carry the right to the possession.  So that this point is not intended to affect the proof of the record title of the plaintiff.  But as we understand it, the position is, that if the statute of limitations had run in favor of Mr. Emil by May 15, 1890, the mere delivery of the deed prior to that date to Mr. Johnston, if he did not actually enter on the land and interrupt the possession of Mr. Emil, would not affect the running of the statute in favor of Mr. Emil.''

In connection with this point and answer it will be recalled that the heirs of McGill conveyed the property in dispute to Henry S. Johnston by deed dated June 13, 1888, approximately twenty-one years after the defendants contended the adverse possession began, and that Johnston conveyed to Fisher, the father of plaintiff, by deed dated May 15, 1890, nearly twenty-three years after the alleged commencement of the adverse possession.

The learned counsel for appellants states in his brief that the point now under discussion ''was intended to present to the jury the legal proposition that if Christian Emmel had continued in twenty-one years adverse possession prior to May 15, 1890, the statute of limitations gave him a title which prevailed over the record or paper title held by the plaintiff.''  If the point had been presented in this language it would have been entitled to an unqualified affirmance.  It was not so presented, however, and defendants injected into the point a matter that was not involved under the pleadings or the testimony, namely, whether or not Johnston had entered upon the real estate under his deed from the heirs of McGill.

The following quotation from the opinion of the trial judge refusing a new trial is, it seems to us, a complete justification for the qualification assigned

as error: "We think the point as framed was calcu-
lated to introduce into the case, or at least suggest to
the jury, a question not involved in the pleadings or
the evidence. The plaintiff did not rely upon title by
possession, but upon record or paper title. The entry
of Johnston upon the ground was not essential to her
title, and his failure to make such entry did not
strengthen defendants' title. The mere suggestion in
the point of his failure to enter upon the ground tended
to convey to the jury the idea that that failure involved
some impairment of plaintiff's title. The qualification
was necessary, we think, to remove this impression.
If the point had been framed without the introductory
clause as to Johnston's entry upon the ground, and
had been limited to what follows, it would have been
entitled to an unqualified affirmance. An unqualified
affirmance of it as stated would have been misleading.
The defendants, moreover, had the advantage of the
unqualified affirmance of their seventh, eighth, ninth,
tenth and twelfth points, which fully presented the
rule of law as to acquisition of title by adverse pos-
session applicable to the facts in evidence, and stated
with reference to those facts." The third assign-
ment is dismissed.

3. By the 4th and 5th assignments of error it is
contended that the court below erred in qualifying or
explaining its affirmance of defendants' 15th point,
which point and answer were as follows:

"An offer by an adverse occupant to purchase
an outstanding title or interest, whether of the
owner' or of a third person, does not interrupt the
continuity of possession.

Answer—This is affirmed with this qualifica-
tion or explanation: that such offer to purchase,
if made by the defendants in this case to the
plaintiff, with reference to the property in suit,
may be considered in determining whether the
alleged possession of the defendants was in fact

hostile or adverse to the plaintiff. It is regarded as possibly being an admission by the parties making such offer, and should be considered and weighed by the jury to determine whether the possession of the defendants was in fact adverse or hostile to the plaintiff.''

The testimony referred to in this point was the testimony of Henry Berger, a son-in-law of the plaintiff, who, in response to the inquiry whether the defendants had in his presence ''tried to negotiate for the sale of the property to them,'' replied: ''Yes, three years ago, around this time of year in the spring, I don't know just the date, Mr. and Mrs. Adlof were in the parlor at our home, that is at Mrs. Daniels' home, and I came in and my mother-in-law introduced me to Mr. Adlof; that is the first time I ever saw him and the first time I ever saw her to know her. And we sat there, and my mother-in-law said, 'Henry, these are the people who live next to the lot down there, and they have come up to see if they can buy it.' And then Mrs. Adlof spoke up and said 'Now Eva, I will give you the purchase price, what your father paid for this lot, and all the taxes that you have paid since he died.' That was about three years ago.''

This witness also testified to the following conversation between Frederick W. Adlof, one of the defendants, and the plaintiff, on Memorial Day, 1924: ''And I heard him say 'Have you got a deed for that lot?' and my mother-in-law said 'Yes.' And he said 'May I see it?' and she said 'Not today you can't see it. This is Decoration Day, and I haven't got it where you can see it.' And he said 'May I see it next week if I come up' and she said, 'Perhaps you can.' And he says 'Show me the deed, and perhaps we can dicker,' or 'we may dicker.' He said dicker anyway. So I overheard that conversation.''

In addition to the testimony of the witness Berger the plaintiff testified that Mary L. Adlof had repeatedly spoken to her of the lot and since her father's death had asked her if her sisters and herself had ever done anything or settled it.

Another witness, Marvin, a real estate agent, testified that he had a conversation with Frederick W. Adlof, one of the defendants, in May, 1924, in the course of which Adlof asked the witness what the price of the property in question was; that the witness ascertained from the plaintiff that the price would be $1500, which information he communicated to Adlof, who replied that he thought it was too much. These are the "offers" referred to in said 15th point. In the general charge the trial judge instructed the jury that the testimony relative to statements of her husband not made in her presence could not affect Mrs. Adlof, and the inferences to be drawn from the testimony of these witnesses and its effect upon the nature of the alleged possession of appellants were all fairly submitted to the jury.

What we have said in disposing of the first and second assignments of error with respect to the distinction between the facts in the present case and those in many of the cases relied upon by counsel for appellants is applicable to the present assignment. Here not only the fact of possession is disputed but, even if possession by appellants be assumed, it would have been extremely difficult for the jury to designate under the testimony any definite period when any actual adverse possession began or how long it continued. One difficulty with the point is that it refers to an offer by "an adverse occupant" and the trial judge would have been justified in refusing the point as drawn because of this assumption of a matter that was in serious dispute under the testimony. If the jury found from the evidence that these declarations or offers were made, it would be their further duty to

find whether under all the circumstances they constituted such an admission of title in the appellee as would have tolled the running of the statute.

We think the trial judge was clearly right in refusing an unqualified affirmation of this point and in instructing the jury to consider this testimony in determining whether the alleged possession was in fact hostile or adverse to the plaintiff.

Whether these offers were mere offers of compromise in the way of buying peace without regard to the title (Sailor v. Hertzog, 2 Pa., 182), or whether they were recognitions of the plaintiff's title and offers to purchase (Deppen v. Bogar, 7 Pa. Superior Ct., 434, 447), were questions for the jury and in our opinion it was the duty of the court to qualify its affirmance of the point now under discussion. The 4th and 5th assignments of error are accordingly dismissed. This disposes of all the assignments of error and there is but one other matter requiring discussion, namely, the motion of appellants to suppress the supplemental record, containing 160 pages of testimony, printed and filed by appellee.

In accordance with our Rule 55 appellants filed in the court below and served their statement of the questions they intended to argue on this appeal and of the evidence they did not intend to print. Upon objections being made, the court below made an order under date of March 27, 1926, approving the designation of the evidence not to be printed with the exception that appellants were directed to print a designated additional portion of the testimony of one of the witnesses. Notwithstanding this order of the court below, the appellee has printed the above mentioned 160 pages of additional testimony. Under the circumstances of this case she is not entitled to be reimbursed for the costs incident to the printing of this supplemental record.

The judgment is affirmed.