# Bear Valley Coal Company *versus* Dewart.

1. An abandoned title is not transferred to an adverse claimant, or person who first seizes the land, but it falls back to the state, and, by its extinction, sometimes makes a younger and conflicting title good. The doctrine of abandonment does not apply to a perfect title, but only to imperfect titles. In favor of a junior warrant or settlement right, after long lapse of time, an imperfect title by warrant and survey may be presumed to be abandoned. But such presumption cannot be made of a perfect title; that is never reinvested in the state on such principle. After the land has been located and patented, it will not fall back because it is derelict, nor for the owner's neglect to pay the taxes.

2. A stranger will not acquire title by payment of taxes on unoccupied land. Actual possession is necessary to acquire title under the Statute of Limitations. The presumption arising from the owner's neglect to exercise every act of ownership, often called abandonment of his waiver of irregularities in sales of land for taxes, or on judicial process, is a very different thing from the statutory title by adverse and continuous possession. In case of conflicting titles the older and better will not be lost by reason of the Statute of Limitations, nor presumption of waiver, upon the mere payment of taxes by the holder of the younger title.

3. The general rule is that the plaintiff in ejectment must recover on the

strength of his own title, and when an outstanding title, better than his own, is shown, he must fail to recover.

4. Foust v. Ross, 1 W. & S. 501 ; Hunter v. Cochran, 3 Barr 105 ; Riland v. Eckert, 11 Harris 215, and McBarrow et al. v. Gilbert et al., 6 Wright 268, reviewed and distinguished.

June 7th 1880.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Northumberland county:* Of May Term 1880, No. 100.

Ejectment by William L. Dewart against the Bear Valley Coal Company, to recover a tract of land.

Dewart is the owner of two adjoining tracts of land situate in Coal township, in the county of Northumberland.  The one containing seventy acres and allowance, &c., was surveyed on the 5th of November 1852, by virtue of warrant to William Wilson and William L. Dewart, dated the 24th of January 1852; and the other, containing forty acres and allowance, &c., was surveyed on the 6th of April 1853, by virtue of a warrant dated the 31st day of March 1853.   Both tracts were patented to these warrantees by one patent dated the 11th day of May 1854, and William Wilson and his wife, by their deed, dated the 24th of September 1857, endorsed on the patent, conveyed all their interest in these lands to William L. Dewart.   These tracts both remained unseated until about the year 1874, when the Bear Valley Coal Company caused a cabin to be built on the southern or last surveyed tract.   Dewart learning that the company had made an entry on his lands, claiming them, on the 11th day of December 1874, brought this ejectment for the one hundred and ten acres of land contained in these two surveys.

On the trial, before Rockefeller, P. J., the company gave no evidence of title in themselves to any part of either of these tracts, but alleged that the heirs of Hugh Bellas, deceased, had a right to twenty-one acres of the northern unseated tract, by virtue of a warrant and survey to Jacob Bright and patent thereon, all prior in date to the warrant to William Wilson and William L. Dewart. The defendant endeavored to set up this older survey as an outstanding title, and claimed a right to defend thereby against the plaintiff's recovery as to these twenty-one acres.

The plaintiff made the following offer of evidence : The unseated land-books of Northumberland county from 1828 to 1874, for the purpose of showing that the James Hepburn tract, an intervening survey, was assessed for taxes during all that time, and that the taxes were paid; that the Jacob Bright tract was assessed up to the year 1844 inclusive, and was not assessed after that date at all. That the lands of Wilson and Dewart were assessed from 1854 inclusive, to the time of bringing this suit.

This to show claim of title by the owners of the Wilson and

Dewart title of the land covered by those surveys, and also that the James Hepburn was claimed by the owners during all that time, and also by the non-assessment and payment of taxes for the Jacob Bright survey that that tract had been abandoned after 1844 or was derelict, and cannot be set up against the title of the plaintiff. Evidence admitted.   (1st assignment of error.)

The defendant, inter alia, submitted the following points, to which are appended the answers of the court:—

1. That the undisputed evidence being that the Jacob Bright survey was located by actual survey on the ground, and patented more than twenty years before warrants were obtained for the De-wart and Wilson surveys, and that twenty-one acres of the Dewart and Wilson surveys interfere with the Bright survey, the plain-tiff has shown no title to this interference, it having been pre-viously appropriated for the Bright survey, and the verdict of the jury must exclude this interference containing twenty-one acres.

Ans. " This is so, but I decline to instruct you that your ver-dict must exclude the interference containing twenty-one acres." (2d assignment.)

3. The non-assessment of taxes by the commissioners of North-umberland county on the Jacob Bright survey on the unseated land-books of the county after the tract had been assessed on said books for fourteen years, can work no forfeiture of the title to the Jacob Bright survey, nor show an abandonment by the owners thereof.

Ans. " I affirm this point, but I cannot say that the facts do not show such an abandonment as will prevent a party without title from setting up this title as outstanding."   (3d assignment.)

4. The defendant having shown a valid title to the Jacob Bright survey in the heirs of Hugh Bellas, deceased, the verdict of the jury must exclude so much of the land embraced in the writ of ejectment in this case as is covered by the Jacob Bright survey.

Ans. " I decline to answer this point as requested.   (4th assign-ment.)

In the general charge, the court, inter alia, said :

" The evidence shows that the Jacob Bright survey, or tract of land, was assessed with taxes soon after it was located or surveyed, and continued to be assessed up to 1844.   The books, however, do not show any payment of taxes during any of those years by any of the owners.   They simply show the assessment of taxes.   From 1844, down to the present time, that tract has never been assessed. No taxes have ever been paid upon it by any person, and no pos-session was ever taken.   No acts of ownership by the warrantee or the patentee, or any other party, has been shown for a period of perhaps thirty-eight years.   On the other hand it has been shown that for the last thirty or forty years, perhaps, taxes have been regularly assessed and paid by the owners, or parties claiming to

[Bear Valley Coal Co. v. Dewart.]

be the owners of the James Hepburn survey. The unseated land-books also show that the William Wilson and William L. Dewart surveys have been regularly assessed, and the taxes paid from 1854 down to the present time; and I am of the opinion that the evidence shows that the title to the Jacob Bright survey is not such an outstanding title as would entitle the defendants to set it up. * *, * So that so far as we know the defendant in this case has no title to this land, and has shown no title to the Jacob Bright survey. They are, for all we know, mere intruders—a party in possession without right or title, or color of title ; and we instruct you, as a matter of law, therefore, that the plaintiff is entitled to recover, and that your verdict must be in his favor."

Verdict for plaintiff, when defendant took this writ and alleged that the court erred as set forth above.

*S. P. Wolverton*, for plaintiff in error.—The question is, did the defendant offer such a valid and subsisting title in a third party as to defeat recovery by the plaintiff. It is difficult to understand why a title which would be considered a valid and subsisting title, if set up by the owner as a defendant in an ejectment, should not be so considered if set up as an outstanding title.

The learned judge relied upon the cases of Hunter v. Cochran, 3 Barr 105 ; Foust v. Ross, 1 W. & S. 506 ; Riland v. Eckert, 11 Harris 215, and McBarron v. Gilbert, 6 Wright 268, to sustain this ruling. These cases are clearly distinguishable. It would be a dangerous doctrine to hold that the owner of a junior survey which interfered with the senior, could acquire title to the interference by mere payment of taxes assessed upon his surveys. The owner's non-payment of taxes cannot be considered as an abandonment of his title. The doctrine of abandonment does not apply to lands held by a perfect title, but only to imperfect titles, by warrant and survey. There are imperfect titles by warrant and survey, abandonment of which may be presumed in favor of a junior warrant or settlement right, or a purchaser of an irregular tax title : Chambers v. Mifflin, 1 P. & W. 74 ; Addleman v. Masterson, Id. 454 ; Star v. Bradford, 2 Id. 384 ; Read v. Goodyear, 17 S. & R. 350 ; Zerbe v. Schall, 4 Watts 138 ; Foust v. Ross, 1 W. & S. 506. But a warrant and survey, returned and accepted on which the purchase-money has been paid, confers a perfect title against all the world but the Commonwealth, which has itself the legal title only as security for the patenting fees. If the payment of taxes by the owner of a junior interfering survey can confer no title upon him, and the non-payment by the owner of the senior survey can work no forfeiture of title, it necessarily follows that there is a valid and subsisting title in the owners of the Jacob Bright survey, and if a better title than the plaintiffs can be set up by the

defendant, as an outstanding title : Watson *v.* Gilday, 11 S. & R. 337.

*Joshua W. Comly*, for defendant in error.—It is true that in his writ of ejectment, the plaintiff asserts that the defendants had both of these tracts in their actual possession, and the defendants, by pleading the general issue, admitted themselves to be in possession of the whole of the land claimed in the writ : Ulsh *v.* Strode, 1 Harris 433 ; but this is a legal fiction, something like the confession of lease, entry and ouster in the old form of ejectment, and intended, as that was, to facilitate the trial of titles. The evidence on the trial was that the defendants had no actual or other possession of the twenty-one acres, and it was perfectly clear that a verdict in favor of the defendants could in no possible contingency do the company any good, and that a general verdict in favor of the plaintiff could not in any manner injure either the coal company or the owners of the Jacob Bright survey, and that to permit the defendants to set up the Jacob Bright title, could have no other effect than to put the plaintiff to the unnecessary and useless expense of making the necessary preparation to show that his is the better title, and in doing so to occupy the time of the court and of the jury in deciding between these titles by a verdict and judgment which would not bind the owner of either title.

The court below did not decide the title of Bellas was an abandoned title, but that it was such a title as the company could not set up, as it was a mere squatter.

Mr. Justice TRUNKEY delivered the opinion of the court, June 22d 1880.

This action is for recovery of a tract of land containing one hundred and ten acres, granted by one patent dated May 11th 1854, on two warrants and surveys, the first dated in 1852 and the second in 1853. Since 1854 the land has been assessed as one tract, unseated, and the taxes have been paid by the plaintiff and those under whom he claims.

In 1829 a patent was granted to Hugh Bellas for a tract of one hundred and eighty acres on a warrant and survey in name of Jacob Bright, dated in the same year, which includes part of the land embraced in the plaintiff's title. This tract was assessed as unseated till 1844, when it was dropped from the assessments. By the pleadings it is asserted and admitted that the defendant is in actual possession of the whole tract covered by the description in the writ, and the trial, verdict and judgment were on that basis. If it be a fiction, the parties so conducted the cause that the record stands as if it were a reality.

To defeat the prima facie title shown by the plaintiff, the defendant proved the outstanding title in Hugh Bellas for about twenty-

[Bear Valley Coal Co. v. Dewart.]

one acres of the land. It was admitted that Bellas is dead and that he left living descendants. Under the evidence there could be no question of the validity of the title vested in the heirs of Bellas, and the court so held; but refused to instruct the jury that their " verdict must exclude so much of the land embraced in the writ of ejectment in this case as is covered by the Jacob Bright survey," and on the ground that the defendant was a mere intruder, ruled that the " outstanding title must be a valid subsisting title, not one abandoned, derelict or barred by the Statute of Limitations," and directed a verdict for the plaintiff. In support of his instruction, the learned judge referred to the cases of Foust v. Ross, 1 W. & S. 501; Hunter v. Cochran, 3 Barr 105; Riland v. Eckert, 11 Harris 215, and McBarron et al. v. Gilbert et al., 6 Wright 268. The scope of the decision in Foust v. Ross is, that when land has been assessed, sold for taxes and deed duly executed by the proper officer, and the taxes subsequently paid by the holder of the tax title for more than twenty-one years, he has such title as enables him to recover against a mere intruder who will not be permitted to insist on irregularities which the former owner may be presumed to have waived by his abandonment. A man may be presumed to have waived irregularities in a tax sale or judicial sale, or in other words, to have abandoned his right to the purchaser after long lapse of time, as is fully explained in Bunting v. Young, 5 W. & S. 188. In Hunter v. Cochran, a purchaser at a tax sale attempted to hold land on which the taxes had been paid, and he failed. Riland v. Eckert enforces like principle, as applied in Foust v. Ross. The land was sold on execution upon a judgment against the administrators without notice to the heirs of the decedent, and it was held the title was good against all persons except the heirs, and after twenty-one years the defendant would not be permitted to set up a defence, the heirs could waive. In McBarron et al. v. Gilbert et al., the facts were as follows: The land in suit, as settled by the verdict, was included in chamber surveys on the Mertz and Flowers warrants which were returned in 1784. In 1794 actual surveys were made on the Morris warrants and patents issued, and these overran the land embraced in the Mertz and Flowers surveys. The title of the defendants originated in 1815, more than thirty years after the return of the surveys on the Mertz and Flowers warrants. Sixty-five years had elapsed from the date of the Morris surveys, and no owner of that title had ever asserted it, and the defendants had no connection with it. It was held that after twenty-one years the law treats all surveys duly returned into the land-office as actual surveys; that before the warrants issued under which the defendants claimed, time had ripened the presumption which started with the return of the Mertz and Flowers surveys, which could not be impaired by the defendants showing that at some former day the Morris title was outstanding;

[Bear Valley Coal Co. *v.* Dewart.]

and that under the circumstances the Morris title must be treated as null. In fact, the title of the plaintiff was on the oldest warrants and surveys and perfect as against the title of defendants, and the alleged outstanding junior title was a nullity.

An abandoned title is not transferred to an adverse claimant or person who first seizes the land, but it falls back to the state, and by its extinction sometimes makes a younger and conflicting title good. The doctrine of abandonment does not apply to a perfect title but only to imperfect titles. In favor of a junior warrant or settlement right after long lapse of time, an imperfect title by warrant and survey may be presumed to be abandoned. But such presumption cannot be made of a perfect title; that is never reinvested in the state on such principle. After the land has been located and patented, it will not fall back because it is a derelict nor for the owner's neglect to pay the taxes : Hoffman *v.* Bell, 11 P. F. Smith 444. A stranger will not acquire title by payment of taxes on unoccupied land. Actual possession is necessary to acquire title under the Statute of Limitations. The presumption arising from the owner's neglect to exercise every act of ownership, often called abandonment, of his waiver of irregularities in sales of land for taxes or on judicial process, is a very different thing from the statutory title by adverse and continuous possession. In case of conflicting titles, the older and better will not be lost by reason of the Statute of Limitations, nor presumption of waiver upon the mere payment of taxes by the holder of the younger title.

The general rule is that the plaintiff in ejectment must recover on the strength of his own title, and when an outstanding title better than his own is shown, he must fail to recover. There are exceptions to the rule, but we are of opinion that the facts of this case do not take it out, and that the defendant's first, third and fourth points should have been affirmed.

Judgment reversed, and *venire facias de novo* awarded.