IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 25, 2003 Session

# CHAQUELA MORGAN, CONSERVATOR OVER THE PERSON AND PROPERTY OF KATIE MAE HIGH v. CHAMPION ROOFING & REMODELING, ET AL. V. CHARLES F. HILL

**A Direct Appeal from the Chancery Court for Shelby County**
**No. 107301-3    The Honorable D. J. Alissandratos, Chancellor**

---

**No. W2002-01941-COA-R3-CV - Filed July 29, 2003**

---

This case involves issues of equitable subrogation, estoppel, abandonment of realty, and unjust enrichment. Appellant is the owner of a one-half undivided interest in the property at issue in this case. The owner of the other one-half interest pledged that interest as collateral on a home improvement loan made by Appellee. Appellant was not a party to this loan and, at the time of the loan, had not lived at the property for several years although there had been no transfer of his title. The original loan went into default and Appellee sought foreclosure on the property. An injunction was issued to stop the foreclosure and the Appellant entered that suit as an Intervening Plaintiff. Following a non-jury trial, the trial court found that Appellant had abandoned the property thereby losing this one-half interest. The trial court subrogated Appellant's interest in the property to the lien held by Appellee. Appellant appeals from this final order. We affirm in part, reverse in part and remand.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY M. KIRBY, J., joined.

John D. Horne, Memphis, Attorney for Intervening Plaintiff-Appellant, Charles F. Hill

J. Alan Hanover, Memphis, For Defendant-Appellee, Boshwit Brothers Mortgage Corp.

**OPINION**

On June 17, 1955, Charles F. Hill ("Hill," "Intervening Plaintiff," or "Appellant") and Katie Mae High ("High") acquired property at 1417 Rayner in Memphis, Tennessee (the "Residence"). In conjunction with the purchase of the Residence, Hill and High executed a First Mortgage Deed

of Trust, to secure their purchase money debt to Leader Federal Bank. Both the Warranty Deed pursuant to which Hill and High acquired the Residence and the Deed of Trust Hill and High executed in favor of Leader Federal indicated that Hill and High were husband and wife. However, Hill and High were never married but were merely living together.

Hill and High continued to reside together until approximately 1983,[1] at which time they separated. After their separation, High continued to live in the Residence. In 1995, High contracted with Champion Roofing and Remodeling ("Champion") to perform work on the Residence. In order to obtain financing for the work, Champion contacted Boshwit Brothers Mortgage Corporation ("Boshwit," and together with Champion and Morgan[2], "Defendants," or "Appellees"). Boshwit has been in the business of mortgage loans and property management in Memphis since 1865. Boshwit obtained a title search, which revealed that the original deed reflected that Hill and High were married when, in fact, they were not, and that the Residence was not owned solely by High, but by Hill and High as tenants in common.

On March 27, 1995, Boshwit made a loan to High in the principal amount of $12,318.60. The funds loaned by Boshwit were used for the benefit of the Residence, including payment of past-due taxes and exterior repairs and remodeling. Hill did not join in the Promissory Note and did not convey his interest in the Residence as collateral. The Deed of Trust executed in conjunction with the Promissory Note lists only High. The Deed of Trust was recorded in the Shelby County Register's Office at Instrument Number EZ 7106 and reads, in pertinent part, as follows:

> This Instrument Prepared by:
> BOSHWIT BROS. MORTGAGE CORP.
> Memphis, Tennessee 38104
>
> DEED OF TRUST
>
> This Indenture made and entered into this 27[th] day of March, 1995 by
> and between
>
> KATIE MAE HIGH, A/K/A KATIE MAE HILL, Unmarried
>
> Party of the first part, and
>
> Party of the second part, Felix H. Bean, III, Trustee,
>     WITNESSETH: ...[S]aid party of the first part has bargained
> and sold and does hereby bargain, sell, convey and confirm unto the

---

[1] There is some dispute in the record as to the exact date that Hill left the Residence. Hill's Complaint states that he left in 1965.

[2] Chaquela Morgan was appointed conservator over the person and property of Katie Mae High, see *infra*.

said party of the second part the following described real estate situated and being in Memphis, Shelby County, Tennessee, to wit:

Lot 119, South Parkway Willett Subdivision, of record in Plat Book 8, Page 106, of the Register's Office of said County.

This being the same property conveyed to Charles F. Hill and wife, Katie Mae Hill, from B.W. Johnson and wife, Merita Johnson, by deed dated June 17, 1955, recorded June 20, 1955, in Deed Book 3507, Page 018, in the Register's office of Shelby County, Tennessee.

PARCEL #048-034-00004

PROPERTY ALSO KNOWN AS: 1417 RAYNER, MEMPHIS, TENNESSEE

\*                                    \*                                    \*

But this is a Deed of Trust, and is made for the following uses and purposes, and none other; that is to say: the said party of the first part is justly indebted to BOSHWIT BROS. MORTGAGE CORP. Or the holder of the notes hereinafter mentioned, in the sum of Thirty-Three Thousand Four Hundred Twenty-Five and 28/100----Dollars...

High defaulted on the loan and, in April of 1996, Boshwit began foreclosure proceedings on the Residence.[3] Thereafter, the original litigation in this case was commenced on behalf of High to enjoin Boshwit's foreclosure. During the course of the original litigation, Chaquela Morgan ("Morgan," and together with Champion and Boshwit, "Defendants," or "Appellees"), was named conservator over the person and property of High. High died soon thereafter. During settlement negotiations, Boshwit attempted to have Hill transfer his interest in the Residence to them for consideration. Hill refused to do so. At some point during the pendency of the litigation, a Quit Claim Deed was discovered. This Quit Claim Deed, dated August 27, 1998, was recorded in the Shelby County Registrar's Office at Instrument Number HS 9947 and purported to transfer Hill's interest in the Residence to High. Hill asserts that this Quit Claim Deed was neither executed nor authorized by him. Boshwit denies any involvement in the preparation or filing of this Quit Claim Deed.

In June of 2000, and after High's death, Boshwit found that the Residence was abandoned. On advice of counsel, Boshwit had the Residence repaired, and then rented it. Boshwit kept records of all rental income and expenditures.

---

[3] From our review of the record, there is no indication that this foreclosure was finalized.

-3-

On July 17, 2001, a Consent Order was entered in the Chancery Court of Shelby County, granting Hill leave to file an Intervening Complaint in the pending lawsuit. On August 2, 2001, Hill filed an Intervening Complaint to Set Aside Fraudulent Conveyance, To Quiet Title and Recover Damages (the "Complaint"). The Complaint reads, in relevant part, as follows:

4. On or about June 17, 1955, Hill and High purchased a parcel of real property located in Shelby County, Tennessee and municipally known as 1417 Rayner, Memphis, TN 38109 (hereinafter referred [to] as the "Residence")....

5. While Hill and High were not married when they acquired the residence, the preparer of the Warranty Deed, nonetheless, showed Hill and High as husband and wife, thereby creating a tenancy by the entireties. While Hill and High, by operation of law, could not have acquired the Residence as tenants by the entireties, the same practical result would have been reached–that Hill and High were either joint tenants with right of survivorship or tenants in common with right of survivorship.

6. In order to purchase the Residence, Hill, an Army veteran, obtained a Veteran's Administration mortgage....

7. While they had not been married, Hill and High resided together for approximately 12 years. During approximately ten of those twelve years, Hill and High resided together in the Residence. During that period of time, Hill made all payments relating to the financing, upkeep and maintenance of the Residence.

8. In approximately 1965, Hill and High separated and Hill left the Residence with the agreement that High could remain in the Residence, provided that she made payments on the parties' mortgage.

\*                           \*                           \*

12. At all times material hereto, Boshwit, Champion and Globe knew, or should have known, of Hill's ownership interest in the Residence, yet they knew that Hill would not and did not pledge his ownership interest in the Residence to secure their alleged debts. Furthermore, Boshwit knew or should have known that it was intended that Hill and High intended to acquire undivided interest in the Residence with a right of survivorship in the person that lived longer.

-4-

13. On or about August 27, 1998, after Boshwit became concerned over its questionable collateral interest in the Residence due to the defective Deed of Trust that had been executed by only High and not Hill, a Quit Claim Deed was strangely recorded in the Office of the Register of Shelby County, Tennessee at Instrument HS 9947.... While that Quit Claim Deed purported to transfer the interest of Hill to High, it was not executed by Hill. That "Quit Claim Deed" was never presented to Hill for his approval or signature, and is a fraudulent instrument that should be set aside and removed from the public record.

14. In 1999, Hill sustained a stroke which resulted in his physical impairment, but not his mental impairment. Since his stroke, Hill has resided at the King's Daughters and Sons Home at 1467 East McLemore Ave., Memphis, TN 38106. During his stay at King's Daughters and Sons Home, representatives of Boshwit have appeared in his room unannounced offering to purchase his interest in the Residence for $500. In addition, representatives of Boshwit have contacted Hill's brother attempting to have Hill sign over his interest in the Residence to Boshwit.

15. Following the death of High, Boshwit unlawfully took possession of the Residence and began to rent the Residence for its own account. Those actions on the part of Boshwit were undertaken without notice to or permission from Hill.

\*                                    \*                                    \*

17. Hill alleges that as a result of the right of survivorship implicit in the Warranty Deed attached hereto as Exhibit A, and as a result of the death of High, Hill is the sole owner of the Residence.... Hill further alleges that Boshwit, having unlawfully and/or wrongfully tak[en] possession of the Residence and used the Residence for its own financial account, should be obligated to repay Hill for the revenues Boshwit generated from its unlawful and/or wrongful use of the Residence.

On August 20, 2001, Boshwit filed its Response to Hill's Intervening Complaint, asking that the Quit Claim Deed be declared correct and valid, that the Deed of Trust executed by High to secure a loan from Boshwit be declared a correct and valid lien against the Residence, and that, regardless of the claim of Hill, Boshwit's Deed of Trust be declared a lien against all interests in the Residence. The Response reads, in relevant part, as follows:

13. ...Boshwit would respectfully show the Court that it was not aware of the said Quitclaim Deed until just recently when it was produced by counsel for Hill. Boshwit would show as to the allegations of Hill that the deed does not bear his signature and the instrument is fraudulent; that it is without sufficient knowledge or information to form a belief as to the truth or falsity of said allegations and would demand strict [proof] of same if its rights are to be affected thereby. Boshwit would further rely on the presumption that the certificate of the notary public is correct and the burden of proof is upon Hill to rebut said presumption. Boshwit would further show to the Court that since the intervening complainant is claiming fraudulent conduct he must establish his claim by clear, cogent and convincing evidence.

14. Boshwit would show to the Court that it did offer money to Charles F. Hill for a quitclaim deed for his alleged or claimed interest in said property in order to clear the title, which is a normal and proper thing for it to do under the circumstances...

15. Boshwit would show to the Court that, upon the death of High, relatives whom the Court had allowed to take her interest by previous order, abandoned the property telling Boshwit that they were not interested in assuming the loan. Boshwit, to protect its interest, did take possession of the property, did repair it, and did rent it and are holding the property and rents subject to the orders of this Court. Boshwit would show to the Court that it expended large sums of money to repair the house and it should have credit for that and it should be allowed to keep the rent that it has collected as credit against what is owed. Boshwit is prepared to make a full accounting of all monies spent to repair and improve the property and all monies collected in rent.

\*                              \*                              \*

17. Boshwit...would show to the Court that it believes that the Quitclaim Deed from Hill to High is valid and that Hill has no interest whatsoever in said property, and that if said Quitclaim Deed is proven to the satisfaction of this Court not to be valid the most interest that Hill could have would be a one-half undivided interest in said property. Boshwit would further show to the Court that the principles of equity would make it Hill and the heirs of High responsible for the Deed of Trust covering the debt to Boshwit, including all accumulated interest and attorney fees. Boshwit would show that Hill received the benefit of the funds which went to

-6-

improve the property and cannot accept those benefits without assuming the responsibilities that go with it...

Pursuant to Tenn. R. App. P. 55, Hill filed a Motion for Default Judgment as to Petitioner/Intervening Defendant Chaquela Morgan on September 28, 2001.[4] On October 2, 2001, Morgan filed an Answer to Hill's Complaint, generally denying Hill's allegations. On February 28, 2002, Morgan's attorney filed a Motion to Withdraw, confirming the death of High and alleging that Morgan had no interest in the Residence, but alleging that he had been unable to attain cooperation from the heirs-at-law of High. On March 8, 2002, an Order was entered, granting Morgan's attorney leave to withdraw.

On July 9, 2002, a non-jury trial was held before Chancellor D.J. Alissandratose in the Chancery Court of Shelby County. Evidence was presented to the trial court by stipulation of counsel for both Hill and Boshwit. No appearance was made at the trial by Morgan or anyone in behalf of High or her heirs-at-law. Following the presentation of evidence, the trial court made the following relevant findings of fact and conclusions of law from the bench:

> This Court as a trier of fact evaluating the stipulations of proof and reading the depositions comes to this conclusion: That Mr. Hill, by legal construction of the word abandon, abandoned his interest in the home in question. Even in a light most favorable to him that he had paid the mortgage for the first 12 years and that Ms. High was going to pay the remaining mortgage, it doesn't address the other issues of property taxes not collected through the mortgage, it doesn't address the maintenance in the form of roof repairs or other just routine maintenance, that not only are demonstrated I think reasonable suspicion by Exhibit 1,[5] but by his own testimony he said he [Hill] saw people out there doing work.
>
> Now, he [Hill] in essence turned his interest over for the complete management of this property to Ms. High. He gave his tacit approval that, Ms. High, you do with this property as you deem fit. And if Ms. High goes and endeavors to improve this, then Mr. Hill is the beneficiary of that and he wants to, and legitimately, receive the benefit of that. If she preserves the asset, he wants to be the beneficiary.

---

[4] There is no indication in the record that this Motion was ever heard or ruled upon.

[5] Exhibit 1 is a reporting, provided by Boshwit, of how the $12,318.60 loan made by them to High was used to pay various expenses on the Residence, including a previous loan for siding, taxes (both City and County), and for work done by Champion. The Exhibit also indicates costs associated with the Mortgage, which were paid by Boshwit, as well as costs and income incurred and gained by Boshwit for repair and rental of the Residence.

If she, therefore, contracts with others to do this, then tacitly he's approving her ability to do so. No, he was not a part of any and it [the Quit Claim Deed] was a forgery but his conduct was almost an indifference. And it's best evidenced by the stipulation that he really didn't even consider this to be his own property anymore. That he didn't even think he really had an interest in it because when he went and declared bankruptcy on the Schedule A, which clearly asked for realty, [the Residence was not listed]. [T]his is not a man who has so numerous numbers of realty that he should overlook it. He didn't even list this one, didn't even schedule it.

His indifference, his abandon cannot now inure to his advantage. I do not find that the defendants are guilty of any culpable negligence. At the very most it's simple negligence. I do think that indeed there was an unjust enrichment to Mr. Hill. He showed no interest in terms of trying to forestall the actions of the defendant because as I stated the abandoned, the indifference.

I think there is a doctrine of equitable estoppel, and all this ultimately leads to the right...of equitable subrogation. And the Court does find that indeed both the mortgage and the repairs do rise to the level of equitable subrogation.[6]

On July 17, 2002, the trial court issued its Final Decree, which reads, in pertinent part, as follows:

...[I]t appears to the Court...that the "Quit Claim Deed" purporting to have been executed by Charles F. Hill and purporting to transfer his interest in the Property was a forgery, is null and void and should be set aside.

It further appears to the Court that the defendant, Boshwit Bros. Mortgage Company, is entitled under the principles of equity providing for equitable subrogation, unjust enrichment, and equitable estoppel to have same applied in its favor in this case so that the Deed of Trust dated March 27, 1995, recorded in the Register's Office as Document EZ 7106 (the "Deed of Trust"), encumbering...1417 Rayner (the "Property"), shall be and the same hereby held to cover and encumber the entire fee simple interest of both Annie Mae Hill and the intervening plaintiff, Charles F. Hill in and to the Property.

---

[6] These findings of fact and conclusions of law were specifically incorporated into the trial court's Final Decree.

It further appears to the Court that Boshwit Bros. Mortgage Company has been renting the Property, has been receiving rental revenues therefrom, and has been using those revenues for payment of expenses related to maintenance of the Property. It further appears to the Court that Boshwit Brothers Mortgage Company, as mortgagee of the Property, is entitled to the rights of equitable subrogation, unjust enrichment, and equitable estoppel as to expenses it has advanced for the maintenance of the Property, including, but not limited to, the payment of repairs, taxes and insurance, which expense should be recoverable from the rent so long as said property is in the name of the said Katie Mae Hill and Charles F. Hill. It further appears to the Court that funds remaining thereafter in the custody of Boshwit Bros. Mortgage Company may be applied to reduce the indebtedness secured by the Deed of Trust that was recorded in the Office of the Register of Shelby County, Tennessee March 27, 1998 at Instrument EZ 7106.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Quit Claim Deed recorded in the Office of the Register of Shelby County, Tennessee at Instrument HS 9947 is a forgery, is null and void, and is hereby set aside.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Deed of Trust recorded in the Register's Office of Shelby County, Tennessee as document EZ 7106 and encumbering...1417 Rayner be, and same is hereby, declared and held to be an encumbrance of and on the entire right title and interest of both Charles F. Hill and Annie Mae Hill...

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant, Charles F. Hill, is entitled to credit for one-half of the rent collected by the said Boshwit Bros. Mortgage Company which can be applied against the indebtedness created by the note secured by said Deed of Trust and/or the said expenses advanced by the said Boshwit Bros. Mortgage Company.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the claim against Champion Roofing and Remodeling is hereby dismissed...

Hill appeals from this Final Decree and raises two issues for our review as stated in his brief:

-9-

1. Did the Trial Court commit error when it ordered the interest of Hill in the Residence to be equitably subrogated to the claims of Boshwit pursuant to the March 27, 1995 Trust Deed executed in its favor by High?

2. Did the Trial court commit error when it ordered Hill to be responsible for High's debt to Boshwit, as well as for all expenses advanced by Boshwit for the maintenance of the Residence?

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d).

## Did the Trial Court commit error when it ordered the interest of Hill in the Residence to be equitably subrogated to the claims of Boshwit pursuant to the March 27, 1995 Trust Deed executed in its favor by High?

The deed to Hill and High dated June 17, 1955 purported to create a tenancy by the entirety. However, because Hill and High were not married, the Deed actually created a tenancy in common, giving both Hill and High an undivided one-half interest in the Residence. *See McKee v. Bevins*, 197 S.W. 563, 563-64 (Tenn. 1917).

The trial court found that Hill had abandoned the Residence and that he was, consequently, estopped from asserting his one-half interest in the Residence. From our review of the record, we must disagree with the trial court's finding on both the issue of abandonment and on the issue of equitable estoppel. Not only do we find that Hill retains his undivided one-half interest in the Residence, but we also hold that this interest is not subject to equitable subrogation under the facts of this case nor is the interest divested under the doctrine of unjust enrichment.

### Abandonment

In its ruling from the bench, the trial court stated that "Mr. Hill, by legal construction of the word abandon, abandoned his interest in the home in question." The trial court bases this conclusion of law on several factors, including Hill's "turn[ing] his interest over for the complete management of this property to Ms. High," his failure to pay the mortgage, taxes, and upkeep on the Residence, and Hill's failure to list the Residence on Schedule A when he declared bankruptcy. Even though we agree with the trial court's finding of fact concerning Hill's action or inaction concerning this Residence, we cannot reach the same legal conclusion of abandonment. *See* Tenn. R. App. P. 13(d).

Under long-standing Tennessee law, the burden of showing that one with title has abandoned an interest in realty is on the party alleging it. As an affirmative defense, it is necessary to plead waiver and abandonment. *Williams v. Williams*, 156 S.W.2d 363 (Tenn. Ct.

-10-

App. 1942). Moreover, the fact of abandonment must be established by "clear and satisfactory proof." ***Woods v. Bonner***, 18 S.W. 67, 68 (Tenn. 1890). Evidence of mere non-use is insufficient, ***Smelcer v. Rippetoe***, 147 S.W.2d 109, 113 (Tenn. 1940), as is proof of failure to pay taxes on the property, even for extended periods of time. ***Phy v. Hatfield***, 126 S.W. 105 (Tenn. 1910). Indeed, some Tennessee cases, reflecting the English common law rule, have held flatly that the "[a]bandonment of estates is unknown to the law in Tennessee," ***Frierson v., International Agricultural Corp.***, 148 S.W.2d 27, 36 (Tenn. 1940), on the theory that title to real estate is a matter of record and subject to change or divestiture only on the record.
In those cases in which the courts have appeared willing to entertain the possibility of finding an abandonment of an owner's interest in realty, they have nevertheless required evidence of a "clear and unmistakable affirmative act indicating a purpose to repudiate ownership." ***Phy v. Hatfield***, *supra*, 126 S.W. at 105. Indeed, the standard is so high that in one case the Tennessee Supreme Court concluded that "[d]ivestiture of a vested legal title by 'abandonment' is unknown at common law, unless it results from some estoppel or adverse possession." ***Southern Coal & Iron Co. v. Schwoon***, 239 S.W. 398, 409 (Tenn. 1921). Moreover, when an abandonment is established, title is not thereby "transferred to an adverse claimant, or person who first seizes the land, but it falls back to the state." ***Id.*** (quoting ***Bear Valley Coal Co. v. Dewart***, 95 Pa. 72, 78 (1880).

In this case, we can find no reference to Hill's alleged abandonment or waiver in the pleadings. Furthermore, we do not find that the evidence clearly and convincingly supports the trial court's finding of abandonment. Rather, we note that the only reason this case is before us is the fact that Hill has asserted his right in the Residence by becoming an Intervening Plaintiff in the original litigation. In addition, the record indicates that Boshwit tried to obtain Hill's interest in the Residence, to wit: "In an effort to clear up the title, I [Andrew Boshwit] contacted Mr. Hill and asked him to see if he would sign a quitclaim deed of his interest in the property." There is nothing in the record to indicate that Hill ever signed such a quitclaim deed.

As noted above, Hill's failure to pay the mortgage, taxes and upkeep on the Residence are not indicative of his intent to abandon the property. Furthermore, the fact that he has not lived in the Residence for over twenty years is not the gravamen of abandonment. Time is not an essential element of abandonment and is unimportant except as indicating intention. ***Cottrell v. Daniel***, 205 S.W.2d 973 (Tenn. Ct. App. 1947); ***see also Walsh v. Tipton***, 190 S.W.2d 294 (Tenn. 1946). It is well settled in Tennessee that, to constitute an abandonment, there must be a clear, unequivocal, and decisive act showing a determination not to have the benefit in question. ***See, e.g., Carroll County Bd. of Ed. v. Caldwell***, 162 S.W. 2d 391 (Tenn. 1942). Hill's acts in entering this litigation as an Intervening Plaintiff, and his refusal to sign a quitclaim relinquishing his title in the Residence indicate the very opposite of abandonment. These acts clearly, unequivocally, and decisively show Hill's determination to assert his legal title in the Residence.


**Estoppel**

While we do not find that Hill's actions, or lack thereof, rise to the level of abandonment of his legal right in the Residence, the trial court has indicated that Hill's neglect of the Residence now precludes him, on the principle of equitable estoppel, from asserting his title. We disagree. The vital principle of the doctrine of equitable estoppel is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss of injury by disappointing the expectations upon which he acted. *Molloy v. Chattanooga*, 232 S.W.2d 24 (Tenn. 1950); *see also Lawrence County v. White*, 288 S.W.2d 735 (Tenn. 1956). In order for there to be grounds for equitable estoppel in this case, Boshwit must have reasonably relied upon some conduct of Hill in deciding to act. The facts of this case do not indicate that Boshwit relied on any action of Hill in making their decision to make a loan to High or to expend money in fitting the house for rental. In making the initial loan, Boshwit relied on its own internal mechanisms. They obtained a title search, which revealed Hill's name on the title; and, in the face of that knowledge, Boshwit proceeded with the loan, choosing to assume the risk. Furthermore, in deciding to take over the Residence, which it deemed to be abandoned, Boshwit admits that they relied "upon the advice of counsel." Neither of these actions by Boshwit was precipitated by anything that Hill did or did not do.

In addition, it is well settled that estoppel is available to protect a right but not to create one. *Franklin v. St. Paul Fire and Marine Ins. Co.*, 534 S.W.2d 661 (Tenn. Ct. App. 1975). The trial court's decision to, in essence, give Hill's title to Boshwit creates a right in Boshwit which it does not have under the law. Boshwit holds no legal title to the Residence. They are merely a secured party. Even if the trial court could divest Hill of his title on the basis of abandonment, which we find that it cannot, the trial court could not, on principles of equity, hand that divested interest to Boshwit. To do so would create legal title to the Residence in Boshwit, who is, at this point, merely a secured party.

## Equitable Subrogation

The trial court further held that Boshwit was entitled, under the principle of equitable subrogation, to have the Deed of Trust dated March 27, 1995 "cover and encumber the entire fee simple interest of both [Katie Mae High] and the intervening plaintiff, Charles F. Hill in and to the Property." We cannot agree with this holding.

Generally, liens are given priority based on the order in which they are recorded; liens recorded first typically have priority over those recorded at a later date. *See* T.C.A.. § 66-26-105 (1993). Subrogation is the substitution of a party in the place of a creditor, so that the party in whose favor subrogation is exercised succeeds the creditor in relation to the debt. *Castleman Constr. Co. v. Pennington*, 432 S.W.2d 669, 674 (Tenn.1968). Subrogation is a creature of equity; its purpose is to provide an equitable adjustment between the parties, based on the facts and circumstances of the case. *Id*. at 675; *Lawyers Title Ins. Corp. v. United American Bank*, 21 F.Supp.2d 785, 792 n .2 (W.D.Tenn.1998). It is not a right, but a remedy whose application depends on a balancing of the equities involved. *See Lawyer's Title*, 21 F.Supp.2d at 792; *Castleman Constr.*, 432 S .W.2d at 676. Subrogation is not appropriate where the equities of the parties are equal, where the parties' rights are not clear, or where it would prejudice the legal or

equitable rights of another. ***Lawyer's Title***, 21 F.Supp.2d at 792. Relevant to this balancing of equities is the degree of negligence of the party seeking subrogation. ***Id***. While ordinary negligence or mistake alone is usually not a bar to subrogation, especially where the equities weigh in the favor of the party seeking subrogation, culpable negligence will generally bar such a remedy. ***See Dixon v.. Morgan***, 285 S.W. 558, 562 (Tenn.1926).

There are at least three reasons why equitable subrogation is not an appropriate remedy in this case. First, Hill is not a creditor; he is a holder of title to this Residence. If the legal rights of Boshwit and Hill were equal (i.e. they were both lienholders on the Residence), subrogation of Hill's lien to Boshwit's lien might be appropriate. However, to subrogate Hill's legal title to Boshwit's lien, is beyond the purview of equity. Next, as stated above, subrogation is not appropriate where the parties' rights are not clear, or where it would prejudice the legal or equitable rights of another. Having ruled out abandonment and estoppel *supra*, the rights of these parties are clear–Hill owns an undivided one-half interest in this Residence and Boshwit is a lienholder on the other one-half undivided interest. Furthermore, as we have discussed above, to subrogate Hill's title to Boshwit would violate Hill's legal right.

Finally, equitable subrogation is not appropriate where the party seeking subrogation has engaged in culpable negligence. While the trial court found that Boshwit had committed only ordinary negligence in proceeding with their loan to High in the face of Hill's interest in the Residence, we find that Boshwit's actions rise to the level of culpable negligence in that they knew all along that Hill had some title in this Residence yet proceeded to secure their debt with only High's interest. In addition, they again assumed a risk when they proceeded to repair the Residence for rental. Under the principles of equity, Boshwit cannot now rely upon the court to undo what they could have prevented by simply refusing to make a loan to High on an unsettled title. ***See*** Gibson's Suits in Chancery (Seventh Ed.) Maxims and Principles of Equity §§ 18,[7] 25,[8] 27.[9]

**Did the Trial court commit error when it
ordered Hill to be responsible for High's debt to
Boshwit, as well as for all expenses advanced
by Boshwit for the maintenance of the Residence?**

Concerning Hill's obligation on the original loan amount paid to High by Boshwit and on the expenses incurred by Boshwit in repairing the Residence after High's death, the trial court held as follows:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that
> the defendant, Charles F. Hill, is entitled to credit for one-half of the

---

[7] He who comes into equity must come with clean hands.

[8] Equity aids the vigilant, not those who sleep upon their rights.

[9] No one can take advantage of his own wrong.

> rent collected by said Boshwit Bros. Mortgage Company which can
> be applied against the indebtedness created by the note secured by
> said Deed of Trust and/or the said expenses advanced by the said
> Boshwit Bros. Mortgage Company.

We first hold that neither the original loan made to High in the amount of $12,318.60, nor any repairs or payments made to and on behalf of the Residence from those monies, can be charged to Hill simply by virtue of the fact that Hill did not sign the Promissory Note.

However, the trial court found that Boshwit's unilateral assumption of maintenance and repairs to this Residence after the death of High constituted unjust enrichment for Hill. Consequently, Hill was entitled to one-half the rents but charged with one-half of the repairs. For the following reasons, we affirm the trial court's finding concerning the rents and costs of repairs made to the Residence after High's death.

The theories of unjust enrichment, *quasi contract*, contracts implied in law, and *quantum meruit* are essentially the same. *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 154 (Tenn. 1966). Unjust enrichment is a quasi- contractual theory or is a contract implied-in-law in which a court may impose a contractual obligation where one does not exist. *Whitehaven Community Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn.1998) (citing *Paschall's,* 407 S.W.2d at 154-55). Such contracts are not based upon the intention of the parties but are obligations created by law and are "founded on the principle that a party receiving a benefit desired by him, under the circumstances rendering it inequitable to retain it without making compensation, must do so." *Paschall's*, 407 S.W.2d at 154. A contractual obligation under an unjust enrichment theory will be imposed when: (1) no contract exists between the parties or, if one exist, it has become unenforceable or invalid; and (2) the defendant will be unjustly enriched absent a quasi-contractual obligation. *Holloway*, 973 S.W.2d at 596. In *Paschall's*, *supra*, the Court stated:

> Each case must be decided according to the essential elements of
> quasi contract, to-wit: A benefit conferred upon the defendant by the
> plaintiff, appreciation by the defendant of such benefit, and
> acceptance of such benefit under such circumstances that it would be
> inequitable for him to retain the benefit without payment of the value
> thereof.

407 S.W.2d at 155.

As previously noted, when the property was left vacant by High's relatives, Boshwit entered possession, made necessary repairs, and rented the premises. It appears that the requirements for *quasi* contract have been met, to wit: (1) Boshwit's repairs to the residence enure to the benefit of Hill in that the repairs effect his one-half interest, (2) Hill admits that he was aware that the repairs were being made, and (3) it would be inequitable to allow Hill this windfall. From the date Boshwit took possession, Hill, as co-tenant in common, is entitled to

one-half of the net income after allowance for payment of the taxes, insurance, maintenance, and repairs.[10]  The parties have alluded to an injunction issued by the court enjoining the foreclosure of Boshwit's trust deed.  Although we find nothing in the record to this effect, if such an injunction exists, it is hereby dissolved, and Boshwit is free to commence foreclosure proceedings of the trust deed encumbering the one-half undivided interest.

In sum, we reverse the final decree holding that Boshwit's trust deed is an "encumbrance of and on the entire right, title, and interest of both Charles F. Hill and [Katie Mae High]," and hold that the trust deed encumbers only the one-half undivided interest of the grantor thereof. We reverse that part of the decree which provides for Hill's share of the net rentals to be applied to reduce the indebtedness secured by the trust deed, and hold that Hill's one-half undivided interest in the property is not encumbered by any part of the indebtedness secured by the trust deed.  The final decree in all other respects is affirmed, and the case is remanded to the trial court for such further proceedings as may be necessary.  Costs of the appeal are assessed one-half to appellant, Charles F. Hill, and his surety, and one-half to Boshwit Brothers Mortgage Company.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.

---

[10] We note that Boshwit's Deed of Trust provides that sums advanced by Boshwit for taxes, insurance, and maintenance become part of the indebtedness secured; thus, on foreclosure of the trust deed, depending on the amount bid for the undivided one-half interest, Boshwit could recover all or part of the sums advanced, reduced, of course, by its share of the net rentals.