Parks et al., Appellants, *v.* Pennsylvania R. R. Co.

476

Argued September 30, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Charles E. Harrington,* with him *J. W. King,* for appellant.—In the many cases defining the extent and boundary of land taken by the canal, where artificially constructed, the court has uniformly held that evidence of what was actually used by the canal for its reasonable enjoyment is competent: Pa. Canal v. Harris, 101 Pa. 80.

There was adverse possession: Dikeman v. Parrish, 6 Pa. 210; Thompson v. Phila. C. & I. Co., 133 Pa. 46.

The assessment and payment of taxes for a period of 75 years, became so notorious as to give the occupants title by the statute of limitations to the whole: McCall v. Neely, 3 Watts 69; Dougherty v. Welshans, 233 Pa. 121.

Regardless of the question of adverse possession, the acts of ownership were so open, plain, decisive, unequivocal and notorious acts of ouster, of such hostile character, as to put defendant on notice: Stevens v. R.

R., 278 Pa. 284; Llewellyn v. Buechley, 198 Pa. 642; Ellicott v. Pearl, 10 Peters 441, 9 U. S. L. ed. 487.

The purchaser from a trespasser may attack the latter's adverse possession to his own so as to give title by the statute of limitations: Plymouth R. R. v. Colwell, 39 Pa. 337; P. R. R. v. Freeport, 138 Pa. 91; Seitz v. P. R. R., 272 Pa. 84.

Abandonment is a question of fact to be determined by the acts and intentions of the parties: Aye v. Phila. Co., 193 Pa. 451; McKelvey v. Wilkinsburg Coal Co., 283 Pa. 227.

*Harry C. Golden*, for appellee.—The Commonwealth owned the bed of Conneaut Lake and the water covering the bed, just as it owned the bed and water of the Kiskiminetas River. The riparian owner owned the fee, in both instances, only to the water's edge: Foust v. Dreutlein, 237 Pa. 108; Conneaut Lake Ice Co. v. Quigley, 225 Pa. 605.

Title is in the Pennsylvania Railroad Co.

It has been decided by our Supreme Court that land held by a railroad company for a public use is not the subject of adverse possession: Del., L. & W. R. R. v. Tobyhanna Co., 232 Pa. 76; Crist v. Boust, 26 Pa. Superior Ct. 543; Bear Val. Coal Co. v. Dewart, 95 Pa. 72.

Adverse possession of land may be said to be founded in trespass, but it must be a trespass constantly continued by acts on the premises. The burden of proof is on those claiming title by adverse possession to establish all the elements of the title by the statute, and, in the absence of proof to sustain any of the requisites of such a title, it must be presumed not to exist: Olewine v. Messmore, 128 Pa. 470.

OPINION BY MR. JUSTICE SIMPSON, November 24, 1930:

These three actions of ejectment involve the title to three parcels of land situate between low watermark of the Kiskiminetas River and State Highway Route No.

66, in Parks Township, Armstrong County, in this State. By agreement of the parties, the cases were tried without the filing of the declaration, answer and abstracts of title required by the Act of May 8, 1901, P. L. 142, 143, and its amendments of June 7, 1915, P. L. 887, and June 12, 1919, P. L. 478. This course would not have been objectionable if the agreement had set forth all the matters required by the statutes, and specifically stated what issues of fact were admitted and what were to be tried. It did not do so, however, though a few were admitted, and hence it was erroneous practice to permit evidence of "matters not appearing in the pleadings," despite the mandatory provisions of the statutes that this shall not be done. At the trial, the court below held that the record title to the property was in defendant, but submitted to the jury the question as to whether or not plaintiffs had acquired a right by adverse possession. The jury determined that they had; the court in banc entered judgment for defendant non obstante veredicto; and plaintiffs have separately appealed. The cases involve the same questions, and all three of them will be decided in this opinion.

In the course of the construction of the Pennsylvania Canal, as authorized by the Act of February 25, 1826, P. L. 55, and its supplements, the board of canal commissioners built a dam across the Kiskiminetas River at a greater elevation than the natural surface of the stream. The effect of its construction was that the surface of the river was so raised in height and extended in width as to cover all of the disputed property. The construction of the dam and the flooding of the land were both essential to the operation of the canal, and the status thus created continued for nearly forty years, until, in 1866, the dam burst, the river receded to its natural height and width, and the overflowed property again became fast land. The dam was not rebuilt, and our first question is to whom the uncovered land thereafter belonged.

In Foust v. Dreutlin, 237 Pa. 108, this exact question was raised and decided. It appeared in that case that, in the construction of the canal, the commissioners "dammed the outlet of Conneaut Lake, by this means raising the water about twelve feet, and causing an overflow of the lands" which theretofore had abutted on the lake. After the canal was abandoned, "the dam across the outlet was broken down, and the water receded to what had practically been the former level." One who claimed title through the owner prior to the submerging, brought ejectment against the grantee of the Commonwealth for the land thus uncovered, and we held that the latter had a fee simple title, saying that the fact that "the Commonwealth took a fee in the land......is to be regarded as settled by an unbroken line of cases." Stare decisis admonishes us that we should not breach that "unbroken line of cases," and hence we need only add that the supposed distinctions arising out of other cases referred to by appellants, where, at common law or under other statutes, the taking did not vest a fee simple title in the State, can have no possible bearing here, where the title was so vested. Perhaps we should add, also, that the question as to whether or not plaintiffs' predecessor in title was paid for the land is a matter of no moment (though it appears that his damages were agreed upon and paid in the manner prescribed by section 8 of the Act of March 24, 1828, P. L. 221, 224) ; for, if he refused or neglected to avail himself of the remedy provided, the State's title to the land cannot be affected thereby : Robinson v. West Pa. R. R. Co., 72 Pa. 316, 320. It is clear, therefore, that, when the dam burst and the waters receded, the Commonwealth continued to own the uncovered land, and her deed to defendant, dated July 31, 1857, made under the authority given by the Act of May 16, 1857, P. L. 519, transferred her fee simple title to it.

Plaintiffs also contend that they have a valid title by abandonment or by adverse possession. How abandon-

ment could give them a title is not stated. If we assume that defendant's failure to use the land during a period of years—and this is the limit to which the evidence goes—would cause it to lose its title (which, of course, it could not), this would not operate to give the title to plaintiffs, and since they must recover, if at all, on the strength of their own title and not on the weakness of defendant's (Adams v. Johnson, 227 Pa. 454), they would not have advanced a single step in the establishment of their claim. "An abandoned title is not transferred to an adverse claimant, or person who first seizes the land, but it falls back to the State...... The doctrine of abandonment does not apply to a perfect title, but only to imperfect titles": Bear Valley Coal Co. v. Dewart, 95 Pa. 72, 78. Perhaps this is somewhat qualified by Kreamer v. Voneida, 24 Pa. Superior Ct. 347, affirmed in 213 Pa. 74, but the qualification does not help appellants, the syllabus which they quote accurately stating the point decided to be as follows: "A perfect title passing by the Commonwealth's patent [as here admittedly it had done] is in no danger from the doctrine of abandonment, unless, in consequence of [the] abandonment, adverse possession is taken by another and held for the period of the statute of limitations."

It is also clear, therefore, that if plaintiffs are to defeat defendant's record title, it must be by proof of one acquired by adverse possession. The burden of proving this is on them, and it will not arise unless there is satisfactory evidence of their actual, continued, exclusive, visible, notorious, distinct and hostile possession of the land for the full period of twenty-one years: Hawk v. Senseman, 6 S. & R. 21; Wright v. Guier, 9 Watts 172-5; Pierce v. Barney, 209 Pa. 132, 135. A sporadic use of land, by one without title to it, will not operate to give him a title, no matter how often repeated: Wright v. Guier, supra. It is true that residence is not necessary to make an adverse possession within the statute of limitation; the possession may be adverse by enclosing and

cultivating the land (Johnston v. Irwin, 3 S. & R. 291);
but nothing short of an actual possession, permanently
continued, will take away from the owner the posses-
sion which the law attaches to the legal title; temporary
acts on the land, without an intention to seat and occupy
it for residence and cultivation or other permanent use
consistent with the nature of the property, are not the
actual possession required: Young v. Herdic, 55 Pa. 172.
Such occupation must be exclusive, and of such a char-
acter as compels the real owner to take notice of the pos-
session of the disseisor: McArthur v. Kitchen, 77 Pa. 62.

In the instant cases there is no proof of appellants'
twenty-one years exclusive occupancy of the whole of
any of the three tracts. They did not fence or otherwise
enclose them, but it is alleged that, at times, parts of
them were cultivated, and that during portions of the
year sand and gravel were taken from them. From these
facts appellants contend that, as they claimed to do
these things under color of title, they were in construc-
tive possession of the rest of the land. The evidence
fails to disclose that they ever made any such claim,
and, if they had, it would have been unavailing. An en-
try is under color of title only when made under a bona
fide claim to all the land, as distinguished from a pre-
tended claim thereto: Green v. Kellum, 23 Pa. 254, 258.
Appellants knew, for they were bound to know, that
their ancestor, through whom they claimed to have a
colorable title, had settled with the State, had been paid
for the land, and his title thereto had ended. He never
thereafter made a claim to the land, and made no at-
tempt to dispose of it as if he owned it. For a number
of years after it again became fast land, neither he nor
appellants used it in any way, unless it was as a com-
mons which the neighors also enjoyed. Needless to say
no "exclusive" possession can be based on that kind of
use. So far as appears, it was first used by others some
twenty years thereafter, without let or hindrance from
appellants. In later years they used parts of it as a real

owner might do, but, entirely aside from the uncertain character of the evidence on the point, there was no proof whatever from which the jury could so clearly set forth the location and extent of those parts as to describe them in a special verdict, in order that they could readily be delivered upon an habere facias possessionem: The Borough of Harrisburg v. Crangle, 3 W. & S. 460; Smith v. Brotherline, 62 Pa. 461. Being in without color of title, appellants could acquire nothing by way of constructive possession (Wright v. Guier, 9 W. 172, 176), but could only get title to that which they had actually enclosed and improved during the statutory period: Bishop v. Lee, 3 Pa. 214. In fact, they enclosed nothing and improved but the undescribed parts to which reference has been made, and as to which, for the reason already given, no recovery could be had even if they had been actually, continuously and exclusively occupied by appellants for twenty-one years.

Moreover, their evidence expressly excludes the idea that for twenty-one years they had exclusive possession of any of the tracts in their entirety. Their own witnesses (and there were no others), testified that "anybody that wanted to could run around on this land," and that it was used as a common pasturage ground, not only by the cows of neighbors, but for many that crossed the Kiskiminetas River for the purpose, and that this continued until a date variously stated as being 1893, 1895 and 1898. Appellants' possession of the whole of the tracts could not have been exclusive while this use continued. Hence they cannot recover at all, because the earliest of those dates precludes the idea that they had exclusive possession for twenty-one years, since the pasturage in 1893 could only have been between the time the grass began to grow in the spring of that year, until the date it dried up in the fall, whereas it is admitted "that the defendant, continuously since on or about January 1, 1914, has been in actual possession of the three tracts of land."

We have not overlooked appellants' contention that the tracts had been assessed to them from 1850 to 1928 (during the first part of which period they had belonged to the State and during the last part were used by defendant for railroad purposes), and that they paid the taxes thus assessed during all that time. The record does not sustain the fact of payment as claimed, but if it did the result would be the same. The fact of such payment is evidence, but "cannot be considered as giving [the payor] actual possession in contemplation of law, especially of that notorious adverse kind which is necessary to constitute an ouster of the party having the legal title": Naglee v. Albright, 4 Wh. 291, 300; Bear Valley Coal Co. v. Dewart, supra; Daniels v. Adlof, 89 Pa. Superior Ct. 69.

The following questions, which apparently lie at the root of this controversy, were not submitted for consideration to either the court below or this court, and are only referred to now lest it be supposed that they have been overlooked by us: 1. Can an individual, in the first instance, successfully maintain ejectment to obtain possession of the roadbed of an operating railroad? 2. If so, can he do so upon a title which he now claims he had at the time the railroad company made an extensive fill in order to grade the ground properly, construct the railroad thereon and subsequently operate it, all of which he knew was being done, yet made no objection thereto until fourteen years thereafter? If it was necessary to answer these questions in order to decide the case properly we would do so, but it is not.

Each of the three judgments of the court below is affirmed.