IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| City of Philadelphia | : | |
| | : | |
| v. | : | Nos. 532 & 537 C.D. 2020 |
| | : | Argued: November 15, 2021 |
| Francis Galdo, et al., | : | |
| Appellant | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE J. ANDREW CROMPTON, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                                         FILED:  December 13, 2021

This matter returns to our Court following a remand to the Court of Common Pleas of Philadelphia County (Trial Court) for consideration of whether Francis Galdo (Galdo) met the requirements to adversely possess property owned by the City of Philadelphia (City). *See City of Phila. v. Galdo*, 181 A.3d 1289 (Pa. Cmwlth. 2018) (*Galdo I*), *aff'd*, 217 A.3d 811 (Pa. 2019) (*Galdo II*). On remand, the Trial Court issued a new opinion, dated January 23, 2020, it which it concluded that Galdo met the requirements to adversely possess the subject property. On a motion for post-trial relief filed by the City, however, the Trial Court, by order dated February 28, 2020, narrowed its ruling to a smaller area of the subject property than Galdo claimed to adversely possess. Galdo appeals from the Trial Court's grant of post-trial relief.[1] We now reverse and remand.

_____

[1] As discussed in more detail below, the City initially appealed from the Trial Court's January 23, 2020 opinion and Galdo filed a cross appeal. Thereafter, however, the City discontinued its appeal. While Galdo's cross appeal remains active and has been consolidated with this appeal from the Trial Court's grant of post-trial relief, it does not appear that Galdo has advanced any arguments relative to the cross appeal in his brief to this Court. Because it appears

# I. Background

The City initiated this matter on April 24, 2014, by filing a complaint against Galdo for continuing trespass, permanent trespass, and ejectment. We explained the factual basis underpinning the City's action in *Galdo I*, as follows:

> Between the streets of Lee, Front, Wildey, and Girard Avenue in Philadelphia is a rectangular lot of undeveloped land (Property) that is the subject of the instant appeal. In July 1962, the City entered into an agreement with the Commonwealth of Pennsylvania (Commonwealth) to assist in the development of various state roads. In furtherance of that agreement, on November 13, 1974, the City obtained title to the Property by condemnation, in order to reroute the [elevated portion of the Market-Frankford Line] to provide additional space for construction of Interstate 95 (I-95). Then on January 19, 1976, the Commonwealth filed a notice of condemnation against several of the City's lots in the area, including the Property. The notice of condemnation indicated that the Commonwealth would permanently retain the land in the I–95 right-of-way, and that the Commonwealth would have a temporary easement on the Property for the period that the [Market-Frankford Line] was rerouted. The parties agree that the City has not physically occupied or provided any maintenance of the Property since the completion of the construction that rerouted the [Market-Frankford Line] in the late 1970s.
>
> In September 1989, Galdo purchased his house on Lee Street, across from the Property. Shortly after purchasing the house, Galdo began using a portion of the Property that the parties refer to as the "Galdo Parcel." It appears that

---

to this Court that Galdo was not aggrieved by the Trial Court's January 23, 2020 opinion, and he fails to develop any issues or arguments in his brief relative thereto, we conclude that Galdo has waived any issues he may have raised for failure to develop them on appeal. *In re Condemnation ex rel. Com., Dep't of Transp.*, 76 A.3d 101, 106 n.8 (Pa. Cmwlth. 2013) ("A party's failure to develop an issue in the argument section of its brief constitutes waiver of the issue."), *appeal denied*, 86 A.3d 234 (Pa. 2014).

2

over the years, Galdo used the Galdo Parcel in a variety of ways, including for storage, parties, and parking. It also appears that he made various improvements or alterations to the Galdo Parcel, including, but not limited to, pouring concrete slabs, installing and (later) removing a fence, installing two large trailers for storage, building a fire pit/brick barbeque and pavilion, and creating a volleyball court, horseshoe pits, and treehouse.

On February 5, 2013, the City posted a public notice on the Property, notifying the public to remove all personal property within 30 days. Galdo refused to comply with the notices and removed them.

*Galdo I*, 181 A.3d at 1290-91 (citations omitted).

The City then filed its ejectment action, and Galdo filed a counterclaim to quiet title, claiming ownership of the Galdo Parcel by adverse possession. Following a non-jury trial, the Trial Court found in favor of the City and ordered Galdo ejected from the Property. The Trial Court concluded that the City was immune from a claim of adverse possession because the Property was devoted to public use in relation to condemnation proceedings at the behest of the Commonwealth and because the Property was held by the City for subsequent resale. Accordingly, the Trial Court concluded that Galdo could not claim title to the Galdo Parcel through adverse possession.

Galdo appealed the Trial Court's order to this Court, and we vacated the Trial Court's order and remanded the matter to the Trial Court for further consideration. *Galdo I*, 181 A.3d at 1290. Recognizing that a claim for adverse possession could not lie against a political subdivision as to land that is subject to public use, we concluded that the Property was no longer held at the behest of the Commonwealth in relation to the condemnation proceedings and that a potential subsequent resale was similarly insufficient to constitute a public use. Thus, we remanded to the Trial

3

Court to consider whether Galdo met the requirements of a claim for adverse possession against the City. *Id*. at 1291-95.

Prior to any determination by the Trial Court on remand, however, the City appealed this Court's decision in *Galdo I* to the Pennsylvania Supreme Court, which granted *allocatur* to consider whether the Property was devoted to public use. The Supreme Court affirmed this Court's decision on all grounds and remanded the matter to the Trial Court to consider the merits of Galdo's claim of adverse possession. *Galdo II*, 217 A.3d at 822-24.

## II. Trial Court Opinion On Remand

The Trial Court, without holding additional evidentiary hearings, issued an opinion on January 23, 2020, concluding that Galdo met his burden to adversely possess the Galdo Parcel.[2] In so doing, the Trial Court individually considered and discussed each of the elements required for a claim of adverse possession—*i.e.*, whether Galdo's possession of the property was actual, exclusive, continuous, open and notorious, and hostile for 21 years.

### A. Actual

The Trial Court first considered whether Galdo had actual possession of the Galdo Parcel, and concluded that, based on the facts stipulated to by the parties, it was clear that Galdo had established actual possession of the Galdo Parcel, but not

---

[2] As will become evident below, the Trial Court appears to be inconsistent in its references to the Property and the Galdo Parcel in its January 23, 2020 opinion. Because Galdo raises this inconsistency on appeal, we have left the Trial Court's terminology in place where the Trial Court's January 23, 2020 opinion is quoted directly, as opposed to substituting "the Galdo Parcel" or "the Property," to avoid any confusion as to what part of the Property the Trial Court was referring to—*i.e.*, the Property, the Galdo Parcel, or the two concrete slabs—as this issue will be considered in more detail later in this opinion.

4

the rest of the Property, for the requisite time period—*i.e.*, 21 years. Trial Court Op. at 5.

### B. Exclusive

Regarding exclusivity, the Trial Court determined that Galdo began possessing the Galdo Parcel exclusively in 1990. *Id.* at 6. While the Trial Court recognized that Galdo began *using* the Galdo Parcel in 1989 when he purchased his home across the street from the Property, it was not until 1990, when Galdo first poured a concrete slab on the Galdo Parcel to park his vehicles on, he erected a fence around the concrete slab, and he began actively chasing people away who were attempting to dump waste on the Property, that such possession became exclusive. *Id.* The Trial Court further noted that City workers complied with Galdo's instructions that they refrain from putting up barriers on or near the Galdo Parcel after a fire. *Id.* Thus, the Trial Court reasoned that "[b]y chasing others off the property, maintaining the property, and using it every day for various reasons[,] this court finds the possession of [t]he Parcel to be exclusive to . . . Galdo from 1990 to present." *Id.*

### C. Continuous

The Trial Court first concluded that the statutory time period for Galdo's claim against the City began running on April 24, 1993, which was 21 years prior to the date the City filed its ejectment suit—*i.e.*, April 24, 2014. *Id.* at 7. The Trial Court then reasoned, as follows:

> As previously discussed, the parties stipulated that sometime in early 1990 Galdo poured a concrete slab on [t]he Parcel to park vehicles. . . . Galdo also performed various activities and continued to improve the [P]roperty by laying a[n additional] concrete slab and park[ing] his vehicles there every day. Additionally, . . . Galdo maintained the lawn, stored materials, installed a firepit,

5

and threw parties every weekend prior to 1993. Since 1993, . . . Galdo has continued to take care of and improve the land and perform various activities[,] including: plac[ing] a flagpole, plant[ing] trees, build[ing] a barbeque, install[ing] picnic tables, and build[ing] a treehouse[,] to name a few. . . . Galdo testified that since 1990 he uses and continues to use the [P]roperty in question every single day and nothing was presented to dispute that fact. Further, there was no evidence presented of interruption of . . . Galdo's use of [t]he Parcel and it has not been abandoned since . . . Galdo, to this day, is using [t]he Parcel. This court finds that . . . Galdo has continuously possessed the land with[out] interruption or abandonment since 1990.

*Id.* (internal citation omitted).

### D. Open and Notorious

The Trial Court next considered whether Galdo's possession was open and notorious such that the City had actual notice of Galdo's adverse possession or had a reasonable opportunity to learn of its existence. In this regard, the Trial Court reasoned, as follows:

The evidence indicates that sometime in early 1990, Galdo poured a 20' x 16' concrete slab on [t]he Parcel on which to park his car. By 1992, Galdo poured an additional 16' x 16' concrete slab, put up a fence to store materials, cleaned away debris . . . and weeds, and began grading a portion of the lot. Additionally, Galdo parked his vehicles on [t]he Parcel every day and hosted parties on the weekends. The City has stipulated that visual improvement to the Galdo Parcel can be seen in photographs taken by the Delaware Valley Regional Planning Commission as early as 1990.

Further, over the years, Galdo has continued to improve [t]he Parcel for the benefit not only of him and his family but the community as well. In 1994, a fire pit, flagpole, and picnic table were added. In 1997, a driveway was built, certain trees were planted, a volleyball court . . . and horseshoe pit [were built] as well as a carport . . . [and]

6

barbeque pit. During this time[,] Galdo also planted grass seeds and continued to maintain the property by weeding and mowing, among other activities[.] Over the next few years[,] two (2) storage containers were added to [t]he Parcel. In 2008, Galdo built a wooden pavilion. From 2010-2014[,] Galdo built a treehouse on [t]he Parcel.

. . . .

The policy reasoning behind adverse possession is to promote active and efficient land use, which is exactly what Galdo did. In all the years Galdo had been using [t]he Parcel[,] the City . . . did not once send a single person by to check on the [P]roperty. Additionally, the City . . . did not maintain the [P]roperty by mowing the grass or pulling the weeds. The City . . . only needed to intervene through effective monitoring at sometime within the [21] years. The only time anyone from the City visited the [P]roperty was after a fire in 1997 and when the [City attempted to sell the land] in 2008. Neither time was notice [sic] was given for Galdo, or anyone[,] to vacate [t]he Parcel.

Our appellate courts have made it clear: visible and notorious possession is possession that either puts the owner on notice or provides the owner with a reasonable opportunity to learn of the use. In this case[,] Galdo poured two (2) separate concrete slabs, put up a fence, stored building materials, cleaned the property, removed debris, pulled weeds, and parked every day[,] among many other things[,] throughout the [21] years on [t]he Parcel. In labeling a property as surplus and belonging to a municipality it is still [the City's] duty to monitor, use, or sell the property or risk losing it to adverse possession. The City . . . had the opportunity to learn of the use of [t]he Parcel by the continued actions of Galdo. Oversight and mistakes are not reasons why this [trial] court should rewrite well-established law to effectuate an unnecessary and unfair change. [Thus,] [t]his court finds[,] based on the activity prior to April 24, 1993, Galdo did open and notoriously use [t]he Parcel.

*Id.* at 8-10 (internal citation omitted).

### E. Hostile

Lastly, the Trial Court considered whether Galdo's possession was hostile—*i.e.*, whether it was done without the City's permission. The Trial Court observed that where all other elements of adverse possession are present, hostility would be implied. *Id.* at 10-11. Thus, because Galdo had met all the other elements for his claim of adverse possession against the City, the Trial Court concluded that the final element of hostility was met as well. *Id.*

### F. Conclusion

In sum, the Trial Court concluded that Galdo had "consistently and continuously maintained and notoriously used the property in plain view for over [21] years to the portion know as '[t]he Parcel[,]'" and he was, therefore, "lawfully occupying and legally entitled to the property." *Id.* at 11. The Trial Court, thus, granted Galdo's counterclaim to quiet title based on adverse possession.

### III. Post-Trial Proceedings

On February 3, 2020, the City filed a motion with the Trial Court for post-trial relief pursuant to Pennsylvania Rule of Civil Procedure (Pa.R.Civ.P.) 227.1(a), seeking a modified judgment.[3] Reproduced Record (R.R.) at 1390a. In support of the motion, the City alleged that the factual finding that Galdo adversely possessed the entire Galdo Parcel was not supported by record evidence. The City contended, rather, that prior to April 24, 1993, the only improvements and/or modifications Galdo made to the area known as the Galdo Parcel included the two concrete slabs poured in 1990 and 1992, which made up only a portion of the Galdo Parcel. The City claimed that all other improvements occurred *after* 1994, and the only other

---

[3] The City also sought a judgment notwithstanding the verdict, which the Trial Court later denied. The denial of the City's motion for a judgment notwithstanding the verdict is not at issue in this appeal.

evidence as to Galdo's activities on the Galdo Parcel prior to April 24, 1993, consisted of the storage of items, an undetermined amount of maintenance, and reference to throwing parties on weekends. The City insisted that Galdo offered no evidence as to what portion or portions of the Galdo Parcel these activities were conducted on or how frequently. Accordingly, the City contended that the evidence did not support a finding that Galdo adversely possessed the entire Galdo Parcel, but rather, only the two concrete slabs poured in 1990 and 1992. The City, thus, requested that the Trial Court modify its January 23, 2020 opinion to reflect that Galdo adversely possessed only the 20' x 16' and 16' x 16' concrete slabs. *Id*. at 1391a-93a.

On February 24, 2020, prior to any determination by the Trial Court on the City's motion for post-trial relief, the City filed a notice of appeal with this Court relative to the Trial Court's January 23, 2020 opinion.[4] Shortly thereafter, however, on February 28, 2020, the Trial Court entered an order (Post-Trial Order) granting the City's motion for post-trial relief and modifying its January 23, 2020 opinion to hold that Galdo had adversely possessed "only the portion of the land that is covered by two concrete slabs, one 20' x 16' and the other 16' x 16' in size[,] and not the entire Parcel . . . ." *Id.* at 1451a. In a footnote to the Post-Trial Order, the Trial Court stated:

> To clarify[,] when this [trial] court refers to "The Parcel" in the discussion section of its opinion, it is specifically detailing the two (2) concrete slabs [Galdo] poured prior to 1993. This [trial] court, in its opinion, did not find [that Galdo] adversely possessed the entire property but merely a portion of it that was used prior to 1993.

---

[4] The City's appeal of the Trial Court's January 23, 2020 opinion was docketed with this Court at No. 283 C.D. 2020.

9

*Id.* Galdo thereafter appealed the Trial Court's Post-Trial Order to this Court.[5]

## IV. Discussion

On appeal,[6] Galdo contends that the Trial Court erred in granting the City's motion for post-trial relief because: (1) the Trial Court was precluded from granting post-trial relief based on Pennsylvania Rule of Appellate Procedure (Pa. R.A.P) 1701, and the Official Note to Pa.R.Civ.P. 227.1(c); and (2) Galdo presented sufficient evidence to the Trial Court to establish that he adversely possessed the entire Galdo Parcel, not just the two concrete slabs.[7]

### A. Trial Court's Authority To Enter Post-Trial Order

#### 1. Pa. R.A.P. 1701

Galdo contends that Pa. R.A.P. 1701 divested the Trial Court of authority to act upon the City's motion for post-trial relief because the City filed an appeal of the Trial Court's January 23, 2020 opinion prior to the Trial Court ruling on the City's motion for post-trial relief. Galdo argues that Pa. R.A.P. 1701 instructs that once an appeal of a trial court's order is filed, the lower tribunal can take no further action on the matter. Galdo, thus, claims that the City's act in filing their appeal of the January 23, 2020 opinion prevented the Trial Court from ruling on the City's motion for post-trial relief, and, hence, the Trial Court erred by entering the Post-Trial Order and granting post-trial relief.

---

[5] The City subsequently filed a praecipe to discontinue its appeal of the Trial Court's January 23, 2020 opinion.

[6] "Our standard of review of a non-jury trial is to determine whether the findings of the trial court are supported by competent evidence, and whether an error of law was committed." *Swift v. Dep't of Transp.*, 937 A.2d 1162, 1167 n.5 (Pa. Cmwlth. 2007), *appeal denied*, 950 A.2d 270 (Pa. 2008).

[7] We have reordered Galdo's arguments for purposes of our discussion herein.

The City counters that Pa. R.A.P. 1701(b)(6) provides that a trial court may proceed further in a matter, notwithstanding that an appeal was taken, if the order is a *non-appealable interlocutory order*. The City argues that the Trial Court's January 23, 2020 opinion was simply an *opinion*, and, thus, it was not a final order from which an appeal could have been taken. Indeed, the City notes that there was no judgment entered after the opinion was issued and the opinion was never reduced to an order. According to the City, the Trial Court was, therefore, free to issue the Post-Trial Order notwithstanding that an appeal had been taken by the City.

The City further directs this Court to the Pennsylvania Superior Court's decision in *Melani v. Northwest Engineering*, 909 A.2d 404 (Pa. Super. 2006). The City observes that, in *Melani*, the Superior Court concluded that an appeal taken prior to a trial court's ruling on a post-trial motion was deemed premature, because, pursuant to Pa.R.Civ.P. 227.4, a post-trial motion must be disposed of prior to the entry of judgment in the matter. The City further observes that, given that the post-trial motion in *Melani* had not been disposed of, "the appeal did not divest the trial court of jurisdiction since the appeal [was] from an interlocutory order." City's Br. at 16 (alteration in original) (quoting *Melani*, 909 A.2d at 406).

In his reply brief, Galdo claims that the Trial Court's January 23, 2020 opinion was not interlocutory but was indeed a final order pursuant to Pa. R.A.P. 341 because it disposed of all the claims in the underlying action. Galdo alleges that the January 23, 2020 opinion was clear in this regard in providing that "Galdo's action to quiet title based on a claim of adverse possession, is granted for the . . . [Galdo] Parcel." Galdo's Reply Br. at 6-7 (quoting Trial Court Op. at 11). Galdo notes that both the Trial Court and the City referred to the January 23, 2020 opinion as a *decision*, thereby establishing that it was a final order. Galdo further distinguishes this case

11

from *Melani* by observing that the procedural posture here was on remand, whereas *Melani* was on a direct appeal. Galdo contends that we cannot rely upon *Melani* because Pa.R.C.P. 227.1 instructs that post-trial motions may not be filed to remand proceedings.

Given the parties' arguments, we must consider whether, pursuant to Pa. R.A.P. 1701, the City's appeal from the Trial Court's January 23, 2020 opinion operated to divest the Trial Court of authority to rule on the City's motion for post-trial relief. Pa. R.A.P. 1701 provides in general that "[e]xcept as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter." It is beyond cavil that "[a]n appeal will lie only from a final order, unless otherwise permitted by rule or statute." *In re Econ. Borough Mun. Auth.*, 922 A.2d 77, 79 (Pa. Cmwlth. 2007). Therefore, it is necessary for us to delve into when an appeal may properly be taken in the context of post-trial motion practice. Post-trial motions are governed by Pa.R.Civ.P. 227.1, which pertinently provides:

> (a) After trial and upon the written Motion for Post-Trial Relief filed by any party, the court may
>
> > (1) order a new trial as to all or any of the issues; or
> >
> > (2) direct the entry of judgment in favor of any party; or
> >
> > (3) remove a nonsuit; or
> >
> > (4) affirm, modify or change the decision; or
> >
> > (5) enter any other appropriate order.

In turn, Pa.R.Civ.P. 227.4 concerns the entry of judgment in a matter in relation to post-trial motions, and offers the following, relevant directives:

> In addition to the provisions of any Rule of Civil Procedure or Act of Assembly authorizing the prothonotary to enter judgment upon praecipe of a party

12

and except as otherwise provided by Rule 1042.72(e)(3), the prothonotary shall, upon praecipe of a party:

(1) enter judgment upon a nonsuit by the court, the verdict of a jury or the decision of a judge following a trial without jury, if

(a) no timely post-trial motion is filed; or

(b) one or more timely post-trial motions are filed and the court does not enter an order disposing of all motions within one hundred twenty days after the filing of the first motion. A judgment entered pursuant to this subparagraph shall be final as to all parties and all issues and shall not be subject to reconsideration; . . . .

We deem the Superior Court's decision in *Melani* to be illuminating with regard to the interplay between Pa. R.A.P. 1701, Pa.R.Civ.P. 227.1, and Pa.R.Civ.P. 227.4.[8] In *Melani*, the Superior Court considered an appeal from an order quieting title to a parcel of property following a non-jury trial. The trial court issued an opinion and order finding in favor of the appellee, and the appellants filed a timely motion for post-trial relief pursuant to Pa.R.Civ.P. 227.1. Before the trial court ruled on the post-trial motion, however, the appellants filed a notice of appeal with the Superior Court. The trial court then filed an order indicating that it no longer had jurisdiction to entertain the appellants' motion for post-trial relief pursuant to Pa. R.A.P. 1701.

On appeal, the Superior Court stated that, "[i]n the context of an equity action decided by a trial judge without a jury, 'an appeal lies from the entry of judgment[.]'"

---

[8] Generally, this Court is not bound by the decisions of the Superior Court, but such decisions provide persuasive authority, and we may rely on the decisions of our colleagues where they address analogous issues. *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

13

*Melani*, 909 A.2d at 405 (alteration in original) (quoting *Croyle v. Dellape*, 832 A.2d 466, 470 (Pa. Super. 2003)). The Superior Court recognized that, in an equity action, post-trial motions pursuant to Pa.R.Civ.P. 227.1 must be filed by an appellant to preserve issues for appeal. The Superior Court further observed that, pursuant to Pa.R.Civ.P. 227.4, "[o]nce a post-trial motion is timely filed, judgment cannot be entered until the trial court enters an order disposing of the motion or the motion is denied by operation of law one hundred and twenty days after the filing of the motion." *Melani*, 909 A.2d at 405.

Based on the foregoing, the Superior Court concluded that the appellants' appeal was premature, because the post-trial motion had not been disposed of and there had been no judgment entered by praecipe or otherwise. *Id*. at 406. The Superior Court opined that "[t]he entry of an appropriate judgment is a prerequisite to this Court's exercise of jurisdiction and 'an appeal filed while a post-trial motion is pending before [the] trial court will be considered premature.'" *Id*. (alteration in original) (quoting *Croyle*, 832 A.2d at 470). Thus, the Superior Court quashed the appeal and remanded the matter to the trial court for the trial court to consider the motion for post-trial relief.

This Court's decision in *Valley Gypsum Company, Inc. v. Pennsylvania State Police*, 581 A.2d 707 (Pa. Cmwlth. 1990), provides further instruction. There, both of the parties filed post-trial motions, but one of the parties subsequently filed an appeal prior to the trial court ruling on those motions. The trial court issued an order dismissing the post-trial motions pursuant to Pa. R.A.P. 1701, indicating that it had no jurisdiction to act further in the matter. Upon review, we quashed the appeal and remanded the matter to the trial court so that it could dispose of the post-trial motions. While we may not have labeled the appeal as "premature," or considered

14

the appeal in relation to Pa.R.Civ.P. 227.4, we clearly indicated that the appeal "frustrated the orderly disposition of the post-trial relief motions." *Valley Gypsum*, 581 A.2d at 709.

Although not binding on this Court, we find the Superior Court's rationale and analysis in *Melani* to be persuasive here, particularly where its holding is reinforced by this Court's decision in *Valley Gypsum*. Applying those holdings here, we conclude the City's appeal was prematurely filed—*i.e.*, prior to the Trial Court ruling on the City's post-trial motion and the entry of any judgment in the matter— and the appeal, therefore, did not divest the Trial Court of its authority to rule on the City's post-trial motion. In this instance, an appealable order is one from which judgment has been entered, and because Pa.R.Civ.P. 227.4 prevents judgment from being entered prior to the resolution of outstanding post-trial motions, the City's post-trial motion prevented any subsequent appeal from divesting the Trial Court of authority pursuant to Pa. R.A.P. 1701 until the post-trial motion was resolved. Indeed, it appears to this Court that holding otherwise would, as we observed in *Valley Gypsum*, "frustrate" the purpose of Pa.R.Civ.P. 227.1, which serves the "important function in [the] adjudicatory process [of] afford[ing] the trial court in the first instance the opportunity to correct asserted trial court error and also clearly and narrowly fram[ing] issues for appellate review." *Newman Dev. Grp. of Pottstown, LLC v. Genuardi's Family Mkts., Inc.*, 52 A.3d 1233, 1239 (Pa. 2015) (quoting *Diamond Reo Truck Co. v. Mid-Pac. Indus., Inc.*, 806 A.2d 423, 428 (Pa. Super. 2002)). For all these reasons, we conclude that the Trial Court did not err pursuant to Pa. R.A.P. 1701 in addressing the City's motion for post-trial relief.[9]

---

[9] Moreover, the City's appeal of the Trial Court's January 23, 2020 opinion was, as the City explains in its brief, "prophylactic" in nature, in that it was intended to preserve an appeal in

15

## 2. Pa.R.Civ.P. 227.1(c)

In the alternative, Galdo contends that Pa.R.Civ.P. 227.1(c) and its Official Note[10] instruct that post-trial motions are prohibited in remand proceedings that do not constitute a trial. In support thereof, Galdo directs our attention to the Supreme Court's decision in *Newman*, for the proposition that remand proceedings do not constitute a trial, and, therefore, post-*trial* motions are prohibited in a remand posture. Again, however, we disagree with Galdo's contentions.

Galdo misinterprets the holding of *Newman*. *Newman* concerned whether, pursuant to Pa.R.Civ.P. 227.1, a party *must* file a post-trial motion in a remand

---

the event the Trial Court denied the City's post-trial motion. City's Br. at 4; *see also* Pa. R.A.P. 903 ("[T]he notice of appeal required by Rule 902 (manner of taking appeal) shall be filed within 30 days after the entry of the order from which the appeal is taken."). Thus, this was not a situation where the City was attempting to abandon its post-trial motion in favor of an appeal of the Trial Court's January 23, 2020 opinion.

[10] Pa.R.Civ.P. 227.1(c) provides, in relevant part:

Post-trial motions shall be filed within ten days after

(1) verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial; or

(2) notice of nonsuit or the filing of the decision in the case of a trial without jury.

If a party has filed a timely post-trial motion, any other party may file a post-trial motion within ten days after the filing of the first post-trial motion.

*Note:* A motion for post-trial relief may be filed following a trial by jury or a trial by a judge without a jury pursuant to [Pa.R.Civ.P.] 1038 [(relating to nonjury trials)]. A motion for post-trial relief may not be filed to orders disposing of preliminary objections, motions for judgment on the pleadings or for summary judgment, motions relating to discovery or other proceedings which do not constitute a trial. *See U.S. Nat'l Bank in Johnstown v. Johnson*, 487 A.2d 809 (Pa. 1985).

16

proceeding in order to avoid waiver of issues on appeal. A party is generally required to file a post-trial motion to preserve issues on appeal and to allow the trial court to correct any errors and frame the issues for appellate review. *See L.B. Foster Co. v. Lane Enters., Inc.*, 710 A.2d 55 (Pa. 1998). *Newman* held, however, that in a remand posture that does not involve further proceedings that amount to a "trial" before the lower tribunal, and where the trial court's subsequent determination is made upon an existing record, post-trial motions are not *required* to preserve issues on appeal. *Newman*, 52 A.3d at 1245-51. *Newman* did not, by any means, hold that post-trial motions are *prohibited* in remand proceedings, as Galdo claims.

Furthermore, while the Official Note to Pa.R.Civ.P. 227.1(c) certainly indicates that post-trial motions are prohibited in proceedings that do not amount to a trial, the Note does not specifically consider remand proceedings. Indeed, after the Supreme Court issued its decision in *Newman*, the Civil Procedural Rules Committee amended Pa.R.Civ.P. 227.1 in 2015 to include subpart (i), which addresses remand proceedings, which provides:

> When an appellate court has remanded a case for further proceedings, a motion for post-trial relief relating to subsequent rulings in the trial court *shall not be required* unless
>
> > (1) the appellate court has specified that the remand is for a complete or partial new trial, or
> >
> > (2) the trial court indicates in its order resolving the remand issues that a motion for post-trial relief is required pursuant to this rule.

Pa.R.Civ.P. 227.1(i) (emphasis added). The explanatory comment to subpart (i) further provides:

> In *Newman* . . . , the Supreme Court . . . examined the provisions of Rule 227.1 to determine whether a party must file a motion for post-trial relief following the

resolution by the trial court of matters remanded by an appellate court. While it concluded in that case that a motion for post-trial relief was not required because the remand proceeding, which relied on an existing record, was not a trial, even though the trial court drew a different conclusion from that record to comport with the appellate court's directive, the [Supreme] Court held that Rule 227.1 is silent as to any procedure for post-trial relief when a matter has been remanded for further consideration by the trial court. *Id*. at 1251.

To close this gap, the Supreme Court has amended Rule 227.1 by adding new subdivision (i). Specifically addressing the remand context, the amendment would not require the filing of a motion for post-trial relief following the resolution of matters remanded by an appellate court except under the following circumstances: (1) the appellate court has specified that the remand is for a complete or partial new trial, or (2) the trial court states in its order resolving the issue remanded that a motion for post-trial relief is required in order to preserve those issues for appellate review.

The amendment is intended to give the practitioner certainty as to when a motion for post-trial relief is required in the remand context, and thus, to prevent waiver of those issues upon further appellate review. It is also intended to facilitate the underlying purpose of the rule, which is to allow the trial court to reconsider its determination and to make any corrections before it is appealed without inundating it with unnecessary motions.

*Id.*, Explanatory Comment 2015. Nowhere in this language is it indicated that post-trial motions are expressly forbidden in remand proceedings that do not necessarily constitute a trial. Thus, based on the Supreme Court's holding in *Newman* and the 2015 amendment to Pa.R.Civ.P. 227.1 concerning remand proceedings, we cannot agree with Galdo's contention that post-trial motions are prohibited in remand

18

proceedings.[11] The Trial Court, therefore, did not err pursuant to Pa.R.Civ.P. 227.1(c) in addressing the City's motion for post-trial relief.

## B. Adverse Possession

Galdo next argues that the Trial Court erred by granting the City's motion for post-trial relief and narrowing its prior ruling to hold that Galdo only adversely possessed the 20' x 16' and 16' x 16' concrete slabs poured in 1990 and 1992. More specifically, Galdo contends that the evidence presented at trial revealed that Galdo's use of the Galdo Parcel extended "far beyond" the two concrete slabs and included the entirety of the Galdo Parcel. Galdo's Br. at 28. In furtherance of his argument, Galdo first takes issue with the Trial Court's terminology and use of the term "The Parcel" in its January 23, 2020 opinion and subsequent Post-Trial Order. Galdo claims that the Trial Court clearly defined the entire plot of land as "the [P]roperty" and the smaller portion that Galdo sought to adversely possess as "the Parcel." Galdo argues that, despite the fact that the Trial Court used the terms "the [P]roperty" and "the Parcel" often interchangeably, the Trial Court's January 23, 2020 opinion recognized that "the Parcel" concerned more than just the two concrete slabs. Galdo further quotes the Trial Court in stating that "[t]he parties agree that [Galdo] is in possession of the Parcel, but not the remainder of the Property." *Id.* at 28-29 n.18 (quoting Trial Court Op. at 5). Thus, Galdo claims that the Trial Court's Post-Trial Order is at odds with its January 23, 2020 opinion and is unsupported by the record.

---

[11] We note that this conclusion is at odds with the Superior Court's decision in *Lenhart v. Travelers Insurance Company*, 596 A.2d 162, 163-64 (Pa. Super. 1991), which concluded that post-trial motions were prohibited in a remand proceeding pursuant to Pa.R.Civ.P. 227.1(c). *Lenhart*, 596 A.2d at 164. *Lenhart*, however, was issued in 1991, prior to the Supreme Court's holding in *Newman* and the subsequent amendment of Pa.R.Civ.P. 227.1. This subsequent history makes clear to this Court that our holding here is, nevertheless, in line with the Supreme Court's precedent and the Pennsylvania Rules of Civil Procedure.

19

Galdo further contends that the Trial Court erred in holding that his possession of the *entire* Galdo Parcel was not *actual possession—i.e.*, that Galdo did not maintain, cultivate, or make improvements to the Galdo Parcel—prior to April 24, 1993. Galdo alleges that he was in actual possession of the Galdo Parcel beginning in September 1989. Galdo observes that the City specifically stipulated to various uses prior to 1993, which included installing the concrete slabs, depositing dirt excavated from Galdo's basement which he leveled and filled, and clearing the Galdo Parcel of weeds and debris. Galdo notes that "use of a piece of land for lawn purposes in connection with a residence, together with continued maintenance of such lawn, is sufficient to establish adverse possession," which Galdo claims stands for the proposition that physical improvements are not necessary to establish adverse possession. *Id.* at 30 (quoting *Reed v. Wolyniec*, 471 A.2d 80, 84 (Pa. Super. 1983). Thus, Galdo contends that these stipulated facts clearly show that he had actual possession of the Galdo Parcel prior to 1993.

Galdo notes that the City also admitted in its Trial Memorandum that the evidence established these other uses, including "cleaning away debris and weeds and grading a portion of the lot with dirt and construction waste excavated from Galdo's home." *Id.* at 31-32 (quoting R.R. at 1285a). Galdo further observes that the Trial Court held that "[a]ctual possession in the case at hand is of no issue . . . [t]he parties agree that [Galdo] is in possession of [t]he [Galdo] Parcel, but not the remainder of the Property." *Id.* at 32 (quoting Trial Court Op. at 5). Galdo further argues that his uncontested testimony at trial established additional uses on the Galdo Parcel prior to 1993, which included "storing building materials, using it daily as a parking lot, hosting parties every Friday and Saturday night, clearing, weeding and

20

grading the Galdo Parcel, burning wood, fencing in one of the slabs and using the Galdo [P]arcel as a driveway . . . ." *Id.* at 32.

The City responds first by noting that, in a claim for adverse possession, establishing the exact geography and the specific location of the property in question is critical. The City contends that piecemeal aggregation of various temporary acts is insufficient to establish adverse possession. While the City admits that, prior to April 24, 1993, Galdo engaged in other "affirmative actions" or activities on the Galdo Parcel other than pouring the concrete slabs, it contends that Galdo failed to show sufficient "temporal or geographic specificity with these particular acts" sufficient to meet his strict burden to adversely possess the entire Galdo Parcel. City's Br. at 23.

As it concerns lawn maintenance, the City admits that Galdo did much of the work by 1992. The City contends, however, that Galdo did not establish that he continued to do lawn maintenance across the entire Galdo Parcel after 1997. The City observes that, despite the fact that Galdo testified that he began maintaining the entire Galdo Parcel after 1997, the Trial Court only found that Galdo maintained part of the Galdo Parcel through 1997. Thus, the City contends that Galdo did not maintain the lawn for the entirety of the 21-year adverse possession period.

The City next argues that the record only reflects that Galdo hosted parties on the Galdo Parcel for a fraction of the 21-year adverse possession period. The City notes that the Trial Court only found that Galdo hosted parties in 1992, and that Galdo testified that he hosted parties again in 1997. Thus, similar to the lawn maintenance, the City takes the position that the inconsistent usage of the Galdo Parcel for hosting parties is insufficient to support a claim of adverse possession.

21

Furthermore, the City observes that Galdo's testimony largely limited the activity of hosting parties to the two concrete slabs, not the entire Galdo Parcel.

Regarding parking and use of a driveway, the City observes that Galdo parked his cars on the concrete slabs and not elsewhere on the Galdo Parcel. While the City admits that Galdo claimed to drive across different parts of the Galdo Parcel to reach the concrete slabs, the City alleges that Galdo did not delineate the alleged area to establish that it was a physical improvement lasting the entire 21-year adverse possession period. While the City concedes that if Galdo had used the same grass-covered area for ingress and egress of his vehicles that it would likely support a finding of adverse possession, it argues that the Trial Court never made a specific finding concerning Galdo's use of the driveway prior to 1993. The City observes, rather, that the Trial Court only found that a driveway was built in 1997, not that Galdo used the Galdo Parcel as a driveway in areas outside the concrete slabs.

Finally, the City argues that, as it concerns the stipulated facts, it only stipulated that Galdo had actual possession of the Galdo Parcel as of the commencement of the ejectment action—*i.e.*, April 24, 2014. The City contends that it never stipulated, and the Trial Court did not find, that Galdo was in actual possession of the Galdo Parcel for the entire 21-year statutory period.

Thus, in sum, the City claims that the various temporary activities Galdo engaged in at the Galdo Parcel—*i.e.*, lawn maintenance, hosting parties, and using the Galdo Parcel to park his cars—were insufficient to establish adverse possession for the entire 21-year time period. While the City concedes that the Trial Court concluded that "Galdo testified that since 1990 he uses and continues to use the [Galdo Parcel] every single day and nothing was presented to dispute that fact," it contends that the Trial Court was within its discretion to change its mind and hold

otherwise. City's Br. at 29 (quoting Trial Court Op. at 6). Accordingly, the City asks that we affirm the Trial Court's grant of its motion for post-trial relief.

In his reply brief, Galdo contends that the Trial Court's Post-Trial Order is both unsupported by the record and "flies in the face of the findings of fact in its own . . . [o]pinion." Galdo's Reply Br. at 9. Galdo notes that while the Trial Court was free to change its mind regarding the extent of Galdo's use of the Galdo Parcel, the Order did not state that it was doing so, and it provided no analysis to support the change in its decision.

Galdo further claims that the City reduces his use of the Galdo Parcel prior to 1993 to lawn maintenance, party hosting, and car parking, while ignoring other uses, which included "clearing the Galdo Parcel of weeds and trash, grading the Galdo Parcel, discarding debris . . . from the remodeling of [Galdo's] home, actively chasing people off the Galdo Parcel, . . . maintain[ing] the lawn, storing materials, installing a fire[ pit,] and using it every day for various reasons." *Id.* at 18 (citing Trial Court Op. at 3, 6, 8). Nonetheless, Galdo proceeds in his reply brief to address the City's claims concerning lawn maintenance, party hosting, and parking and driveway usage. More specifically, Galdo highlights the following: (1) the Trial Court concluded that he engaged in lawn maintenance at least from 1990 through 1997, and the Trial Court never concluded that Galdo's lawn maintenance ceased thereafter; (2) the Trial Court concluded, and Galdo's testimony supports the fact, that he hosted parties every weekend from 1990 through 1997 and that the use of the Galdo Parcel for hosting parties extended beyond the concrete slabs; and (3) the Trial Court found that he used the Galdo Parcel to park his vehicles every day and the usage continued from 1990 through at least 1997 at which time Galdo built a driveway. Galdo further contends that there is no requirement that the same specific

use must be established for the entire statutory period, as the City asserts, and that he used the Galdo Parcel in a variety of ways consistently throughout the 21 years.

Lastly, Galdo contends that paragraphs 14 and 15 of the stipulated facts specifically use the defined term "Galdo Parcel," not "the Parcel," and the Trial Court cited to paragraphs 14 and 15 of the stipulated facts and held that actual possession was not in dispute in the matter, and that it was clear that he was in actual possession of the Galdo Parcel since 1990. Thus, Galdo alleges that the Trial Court's Post-Trial Order is unsupported by the record, as all of its findings make clear that he adversely possessed the entire Galdo Parcel and not just the two concrete slabs.

We begin our analysis by reciting our "rigorous" standard of review:

> A [trial court's] findings of fact will not be disturbed absent an abuse of discretion, a capricious disbelief of the evidence, or a lack of evidentiary support on the record for the findings. A [trial court's] conclusions of law are subject to stricter scrutiny. Unless the rules of law relied on are palpably wrong or clearly inapplicable, however, a grant of . . . relief will not be reversed on appeal.

*Lilly v. Markvan*, 763 A.2d 370, 372 (Pa. 2000) (quoting *Masloff v. Port Auth. of Allegheny Cnty.*, 613 A.2d 1186, 1188 (Pa. 1992)). An appellate court will not hesitate to reverse, however, where a decision is based on "findings which are without [factual] support in the record." *Bortz v. Noon*, 729 A.2d 555, 559 (Pa. 1999) (quoting *Rusiki v. Pribonic*, 515 A.2d 507, 510 (Pa. 1986)).

In an adverse possession claim, the burden lies with the claimant to prove actual, continuous, exclusive, open and notorious, and hostile possession of the land in question for a period of 21 years. *Parks v. Pa. R.R. Co.*, 152 A. 682, 684 (Pa. 1930). "It is a serious matter indeed to take away another's property[,] [which] is why the law imposes such strict requirements of proof on one who claims title by adverse possession." *Edmondson v. Dolinich*, 453 A.2d 611, 614 (Pa. Super. 1982).

24

Sporadic use of a property is insufficient to establish title to the property, "no matter how often repeated." *Parks*, 152 A. at 684.

> It is true that residence is not necessary to make an adverse possession [claim] within the statute of limitation[s]; the possession may be adverse by inclosing and cultivating the land[,] but nothing short of an actual possession, permanently continued, will take away from the owner the possession which the law attaches to the legal title[.] [T]emporary acts on the land, without an intention to seat and occupy it for residence and cultivation or other permanent use consistent with the nature of the property, are not the actual possession required. Such occupation must be exclusive, and of such a character as compels the real owner to take notice of the possession of the disseisor.

*Id*. (citations omitted); *see also Flickinger v. Huston*, 435 A.2d 190, 193 (Pa. Super. 1981) ("temporary acts on the land, without an intention to seat and occupy it for permanent use . . . consistent with the nature of the property" is insufficient to establish adverse possession). "Only acts signifying permanent occupation of the land and done continuously for a [21-]year period will confer adverse possession." *Smith v. Peterman*, 397 A.2d 793, 796 (Pa. Super. 1978). While actual possession generally means dominion over the land, it has no precise definition and is dependent upon the facts of each case. *Moore v. Duran*, 687 A.2d 822, 827 (Pa. Super. 1996). "Actual possession of property may be established in connection with the maintenance of a residence, by cultivation of the land, by [e]nclosure of the land, or by making improvements to the land and paying property taxes." *Id.* at 828.

After careful review of the entire record in this matter, as well as the Trial Court's January 23, 2020 opinion and Post-Trial Order and the voluminous briefs submitted by the parties, we agree with Galdo that the Trial Court erred in granting

the City's motion for post-trial relief and narrowing its holding to limit Galdo's claim of adverse possession to the two concrete slabs.

At the outset, we observe that the Trial Court's use of terminology in the January 23, 2020 opinion confuses this matter, in that the Trial Court interchangeably used the terms "parcel," "property," "Property," and "the Parcel" while referring to various areas of the Property or the Property itself. Nevertheless, we agree with Galdo that the Trial Court's January 23, 2020 opinion is most logically read, through a number of examples, to define "the Parcel" as what this Court and the parties have referred to as the Galdo Parcel, and not just the two concrete slabs:

> The property at issue in this case is a rectangular lot of undeveloped land located at 1101-1119 N. Front Street in Philadelphia (hereinafter "[t]he Parcel"). . . .
>
> . . . In early 1990, Galdo cleared the Parcel of weeds and trash, poured a concrete slab, and parked his vehicles there. Galdo also used the Parcel to discard debris from the remodeling of his home. During this time, someone other than [Galdo] was seen dumping materials onto [t]he Parcel. By 1992, Galdo poured another concrete slab on the Parcel for storing materials and enclosed that area with a fence. Galdo installed on the Parcel a fire pit and a picnic table affixed to the ground. In 1997, a nearby factory burned down and Galdo created a driveway on the Parcel with materials collected from the remains of the factory. Galdo also planted two maple trees and built a carport with metal poles, which was later replaced with a wooden pavilion. Additionally, in 1997, Galdo converted the fire pit on the Parcel into a brick barbecue, installed two oversized trailers to store gardening tools and the like, and installed a volleyball court and horseshoe pit. Between 1998 and 2001, Galdo planted grass seed on a portion of the Parcel . . . and planted a willow tree in 2010. . . .
>
> . . . .

26

. . . The parties agree that [Galdo] is in possession of [t]he Parcel, but not the remainder of the Property. . . .

. . . .

. . . Further, the parties stipulated that sometime in early 1990 Galdo poured a concrete slab on the Parcel to park [his] vehicles. . . . By chasing others off the property, maintaining the property, and using it every day for various reasons[,] this court finds the possession of [t]he Parcel to be exclusive from . . . Galdo from 1990 to present.

. . . .

As previously discussed, the parties stipulated that sometime in early 1990 Galdo poured a concrete slab on the Parcel to park [his] vehicles. . . . Galdo also performed various activities and continued to improve the property by laying a concrete slab and park[ing] his vehicles every day. . . .

. . . .

The evidence indicates that sometime in early 1990, Galdo poured a 20' x 16' concrete slab on [t]he Parcel on which to park his car. By 1992, Galdo poured an additional 16' x 16' concrete slab, put up a fence to store materials, cleaned away debris . . . and weeds, and began grading a portion of the lot. . . .

. . . Over the next few years[,] two (2) storage containers were added to [t]he Parcel. In 2008, Galdo built a wooden pavilion. From 2010-2014[,] Galdo buil[t] a treehouse on [t]he Parcel. . . .

Trial Court Op. at 2-9 (internal citations omitted).

The foregoing makes clear that, throughout the Trial Court's January 23, 2020 opinion, when it referenced "the Parcel," it was discussing the entire Galdo Parcel and not just the two concrete slabs. Indeed, the Trial Court identified a number of activities Galdo engaged in on "the Parcel," most notably the actual pouring of the concrete slabs "*on the Parcel*," which could not have occurred on the concrete slabs

27

themselves. Nonetheless, in the Trial Court's Post-Trial Order, it stated that "when this [Trial] [C]ourt refer[red] to '[t]he Parcel' in the discussion section of its opinion, it is specifically detailing the two (2) concrete slabs [Galdo] poured prior to 1993." R.R. at 1451a. This statement provided the basis for the Trial Court to limit its finding of adverse possession to the two concrete slabs. The Trial Court, however, failed to provide any reasoning to support its change of heart, despite the fact that its Post-Trial Order directly contradicted the findings of fact it made in its January 23, 2020 opinion.

Based on the foregoing, we conclude that the Trial Court's Post-Trial Order finding that Galdo only adversely possessed the two concrete slabs, is unsupported by the record. It is clear to this Court that the Trial Court's findings—*i.e.*, those made in the January 23, 2020 opinion concerning Galdo's activities on the Galdo Parcel beyond the concrete slabs and prior to April 24, 1993—have ample support in the record and should not have been modified without adequate explanation. Significantly, the Trial Court found that

> [t]he evidence indicates that sometime in early 1990, Galdo poured a 20' x 16' concrete slab on [t]he Parcel on which to park his car. By 1992, Galdo poured an additional 16' x 16' concrete slab, put up a fence to store materials, cleaned away debris . . . and weeds, and began grading a portion of the lot. Additionally, Galdo parked his vehicles on [t]he Parcel every day and hosted parties on the weekends. The City has stipulated that visual improvements to the Galdo Parcel can be seen in photographs taken by the Delaware Valley Regional Planning Commission as early as 1990.

Trial Court Op. at 8 (internal citation omitted). These facts were stipulated to by the parties, are otherwise supported by Galdo's testimony, and are not in dispute. R.R. at 908a-10a, Stipulated Facts ¶¶ 24-27, 37; R.R. at 582a; s*ee also* City's Br. at 21

28

("[The City] . . . accept[s] as true the factual conclusions that the Trial Court drew in the January 23, 2020 opinion."). Thus, it is clear that the record supports a finding that Galdo engaged in activities on the Galdo Parcel that extended beyond the two concrete slabs prior to April 24, 1993, sufficient to establish actual possession.

Furthermore, while the City concedes that Galdo engaged in a number of activities prior to April 24, 1993, that could be sufficient to establish adverse possession, it contends that these activities were various and temporary in nature and, therefore, inoperative as a matter of law to establish adverse possession. Although we agree with the City that "temporary acts on the land, without an intention to seat and occupy it for . . . permanent use consistent with the nature of the property" are insufficient to establish adverse possession, the cases the City cites in support of its contention concerned temporally spread-out and isolated activities that the claimants attempted to string together to support their claims. *See, e.g.*, *Parks*, 152 A. at 684-85 (partial cultivation and sand and gravel extraction of some portions of the land was insufficient to establish adverse possession); *Flickinger*, 435 A.2d at 192-93 (isolated activities over 21 years of clearing 2 stream banks, draining a swampy area, planting some trees, picnicking and erecting a fence in vague and inconclusive area considered temporary and insufficient for adverse possession claim); *Edmondson*, 453 A.2d at 613-14 (sporadic, non-exclusive, temporary use of an alley was insufficient to establish adverse possession); *Smith*, 397 A.2d at 795-97 (rejecting claim that temporary acts strung together over 21-year period was sufficient for adverse possession). Significantly, none of those cases considered a factual scenario involving consistent, daily, or weekly use of a property, as the Trial Court found here with Galdo's use of the Galdo Parcel as it relates to parking, hosting parties, conducting general maintenance, and making improvements thereon

29

from 1990 through 2014. Trial Court Op. at 5, 7-8. Further absent from those cases is an "intention to seat and occupy [the property] for residence and cultivation or other permanent use consistent with the nature of the property," *Parks*, 152 A. at 684, which is similarly contrary to the facts of the present case. The stipulated facts, including those continuing up through 2014, clearly portray that Galdo treated the Galdo Parcel in a manner consistent with its nature and with an intent to occupy it permanently. *See* R.R. at 909a-10a, Stipulated Facts ¶¶ 28-36.

We similarly find no requirement in the case law that, where an individual initiates an activity, that activity must be maintained for the entire 21-year time period, despite the fact that the property was consistently being used for a variety of other activities during the same time. In other words, we do not interpret the case law to mean that Galdo's claim for adverse possession must necessarily fail because the record is unclear whether he engaged in lawn maintenance after 1997, but where evidence of other consistent uses were present at that time. Rather, the foregoing cases concern consistent and notorious use of property as opposed to temporary, sporadic use, and the stipulated facts here clearly establish that Galdo engaged in consistent use of the Galdo Parcel through 2014. Thus, we similarly reject the City's claim in this regard.

In sum, based on the evidence of record, and in particular the Trial Court's factual findings in its January 23, 2020 opinion, we conclude that the Trial Court's Post-Trial Order limiting its finding of adverse possession in favor of Galdo to the two concrete slabs is unsupported by the record, and, thus, the Trial Court erred in granting the City's post-trial motion. *Bortz*, 729 A.2d at 559. Rather, the evidence of record clearly establishes that Galdo had actual possession of the Property that encompassed the entire Galdo Parcel and that his use was consistent through the

adverse possession period. Based on this evidence, the Trial Court initially concluded that Galdo had adversely possessed the entire Galdo Parcel for the required 21-year period. Without providing an explanation, the Trial Court subsequently attempted to limit its holding to only the concrete slabs. The Trial Court's Post-Trial Order, however, is inconsistent with its own analysis and explanation as set forth in its January 23, 2020 opinion. Indeed, it is revealing that the Trial Court expressly concluded that "[a]ctual possession in the case at hand is of no issue. . . . Based on the facts and stipulations made by the parties[,] it is clear that [Galdo] is in actual possession of the property." Trial Court Op. at 5; *see also* R.R. at 907a, Stipulated Facts ¶¶ 14-15.

## V. Conclusion

For these reasons, we conclude that the Trial Court erred in entering the Post-Trial Order and granting the City's motion for post-trial relief. Accordingly, we reverse the Post-Trial Order. In addition, we remand this matter to the Trial Court, with instructions that it enter judgment in favor of Galdo, in a manner that is consistent with this opinion.

ELLEN CEISLER, Judge

31

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| City of Philadelphia | : | |
| | : | |
| v. | : | Nos. 532 & 537 C.D. 2020 |
| | : | |
| Francis Galdo, et al., | : | |
| Appellant | : | |

# **O R D E R**

AND NOW, this 13th day of December, 2021, it is hereby ORDERED that the Court of Common Pleas of Philadelphia County's (Trial Court) order, dated February 28, 2020, is REVERSED. It is FURTHER ORDERED that this matter is REMANDED to the Trial Court, with instructions that it enter judgment in favor of Appellant Francis Galdo, in a manner that is consistent with the foregoing opinion.

Jurisdiction relinquished.

ELLEN CEISLER, Judge